**Hubert ASHE, Plaintiff, Appellant,**

**v.**

**Robert S. McNAMARA, Secretary of Defense, Appellee.**

**No. 6580.**

United States Court of Appeals
First Circuit.

Heard Nov. 1, 1965.

Decided Dec. 14, 1965.

Edward Berlin, Atty., Dept. of Justice, with whom John W. Douglas, Asst. Atty. Gen., W. Arthur Garrity, Jr., U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for appellee.

Before ALDRICH, Chief Judge, and HASTIE * and McENTEE, Circuit Judges.

HASTIE, Circuit Judge.

The appellant is a former Steward in the United States Navy who served a term in prison and was dishonorably discharged from the naval service in 1948 pursuant to the sentence of a general court-martial. In 1959, several years after the completion of his prison sentence, he petitioned the Board of Correction of Naval Records (hereinafter called the Correction Board) to exercise its authority under section 1552 of title 10, United States Code, to change his discharge to one under honorable conditions. The Board denied his petition and the Secretary of the Navy approved that action. Thereafter, the United States Court of Military Appeals dismissed a petition to review this administrative action and the sentence it confirmed.

■ As plaintiff, the appellant then brought this action in the District Court for the District of Massachusetts, the place of his residence, against the Secretary of Defense [1] to compel favorable action on his petition to change the dishonorable character of his discharge. The Secretary filed a motion for summary judgment. The essential facts were not in dispute. In this posture of the case, the court granted summary judgment for the defendant, ruling that "this court does not have jurisdiction of the subject matter." This appeal followed.

Richard W. Murphy, Braintree, Mass., for appellant.

* Sitting by designation.

[1]. Because section 1552 of title 10, U.S.C., in terms confers authority to change records upon the "Secretary of a military department * * * acting through" a board, it would have been appropriate in this case to have sued the Secretary of the Navy. But because of the general authority of the Secretary of Defense over the naval establishment and the specific recognition of his supervisory role in the provisions of section 1552, we think it suffices that the Secretary of Defense was named and served as the defendant in this case.

At the outset, it merits mention that this action is brought under section 1361 of title 28, United States Code, part of a 1962 enactment which enlarged the jurisdiction of the district courts and liberalized venue. 76 Stat. 744. That statute explicitly gives all district courts now for the first time "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States * * * to perform a duty owed to the plaintiff." Moreover, an additional provision of the 1962 enactment, which is now section 1391 of title 28, creates venue for such an action at several places, among them the district in which the plaintiff resides, and in so doing expressly makes the defendant amenable to service by certified mail beyond the territorial limits of the district in which the action is brought. Thus, obstacles which until recently might have impeded this suit in any district other than the District of Columbia,[2] no longer exist.

We come now to the substance of the appellant's claim as disclosed without substantial dispute by affidavits and naval records which were before the court below. The appellant was one of three sailors who were tried together on a charge of assaulting a fourth sailor and wounding him with a knife. A single officer, Commander H. M. Hart, was assigned as defense counsel for the three accused and represented them throughout the trial.

Before the trial, both the appellant and one of his codefendants, Mancy Brown, had told their counsel that the appellant had not struck the victim of the alleged assault. Brown also admitted to counsel that he himself had struck blows, though not with a knife. However, when placed on the stand at trial Brown testified that the appellant had struck the victim. Indeed, he pictured the appellant as striking the first blow and continuing the affray after Brown had withdrawn from it. Defense counsel immediately informed the court that this unexpected testimony, contradictory to the advice upon the basis of which he had undertaken to act for both Brown and the appellant, placed him in the position of being unable to defend either without attacking the other. His exact words as they appear in the trial transcript were as follows:

> "If the court please, since the interests of the two accused are so antagonistic I hardly know how to proceed. It's as difficult a position as I have ever been placed in. I don't think I should continue to represent the two defendants. I would like to ask the judge advocate as to his advice for the proper procedure so that one of these accused can obtain counsel who can properly represent him. I don't think I can represent them both properly."

Nevertheless, the court required defense counsel to proceed on behalf of all defendants and all were ultimately convicted and sentenced to terms in prison and to dishonorable discharges from the Navy.

Also noteworthy is an occurrence during the course of a departmental reexamination of the record of these convictions made in response to a protestation of innocence which the apppellant, during his incarceration and after his conviction had become final, addressed to the Judge Advocate General. An officer of the Judge Advocate General's review section placed in the file a memorandum in which he discussed briefly the position into which the court had forced defense counsel and concluded that "such action on the part of the court, in effect, denied the accused, Ashe, his right to have effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution."

---

2. See Hart and Wechsler, THE FEDERAL COURTS AND THE FEDERAL SYSTEM, 1186–87; Byse, Proposed Reforms in Federal "Nonstatutory" Judicial Review: Sovereign Immunity, Indispensible Parties, Mandamus, 1962, 75 Harv.L.Rev. 1479; and Note, Mandatory Injunctions as Substitutes for Writs of Mandamus in the Federal District Courts, 1938, 38 Col.L.Rev. 903.

We find this conclusion so obviously correct that it requires no discussion beyond the citation of relevant authorities. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; United States v. King, 1954, 17 C.M.R. 423, cf. United States v. Eskridge, 1957, 24 C.M.R. 71. Once co-defendant Brown had contradicted appellant's contention that he did not participate in the alleged assault, and despite an equivocal retraction by Brown on further questioning after counsel's request to withdraw had been denied, it was simply impossible for Commander Hart to function effectively as counsel and advocate for both men.

It follows that appellant's conviction was the product of court-martial procedure so fundamentally unfair that, upon a proper petition, a district court at the place of his incarceration would have been obligated to grant him a writ of habeas corpus, find his sentence invalid and order his release from imprisonment.[3] However, pursuant to administrative action by the Secretary of the Navy in August 1949, appellant's sentence, originally five years, was reduced to two and one-half years, and he was released on parole a few days later. Thereafter, he suffered no deprivation of liberty upon which a petition for habeas corpus could have been based.

This brings us to the question concerning the availability of another remedy upon which decision turned in the district court. Given administrative power to set aside a dishonorable discharge—the existence of which will be shown—is there a judicially enforceable duty to do so where it appears that constitutional rights of the accused were violated in the military trial which eventuated in the long since final sentence ordering such a discharge? The district court thought not.

Our analysis of this problem in the context of this case begins with section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 837, 10 U.S.C. § 1552, which in terms provided that the "Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice." This statute enabled the Secretary, acting through a civilian Correction Board, to change the kind of discharge a former service man had received and relieved Congress of the burden of the great number of private bills theretofore introduced at each session to accomplish such changes. Moreover, this power of review was conferred in sufficient generality to cover discharges pursuant to court-martial sentences as well as administrative discharges.[4] To this extent Congress created an exception to or authorized relief from the mandate of the 76th Article of the Uniform Code of Military Justice that "all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive." 10 U.S.C. § 876, art. 76.

As originally enacted, the 1946 statute said nothing about the finality of the

---

3. Although there was no majority opinion in Burns v. Wilson, 1953, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508, all members of the court but two clearly indicated that habeas corpus at least reaches such fundamental unfairness in a court-martial procedure as the denial of effective assistance of counsel. See also the separate opinion of Mr. Justice Frankfurter when rehearing was denied. 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363.

4. Naval Regulations, published in Bureau of Naval Personnel Manual, Part C- 10311, prescribe five types of discharges from the wholly creditable Honorable Discharge to the most discreditable Dishonorable Discharge. Between these are the General Discharge, the Undesirable Discharge, and the Bad Conduct Discharge. Dishonorable and Bad Conduct Discharges, unlike the three more creditable categories of administrative discharges, are imposed by courts-martial, and a Dishonorable Discharge may be imposed only as part of the sentence of a general court-martial. See also footnote 7 infra.

authorized administrative action. Shortly thereafter, the Comptroller General refused to recognize a change in the type of a discharge thus accomplished as affecting forfeiture of monetary benefits which attended the original discharge. 27 Decs.Comp.Gen. 665 (1958). In the light of this experience, an amendatory bill was introduced in Congress providing that monetary settlements attending administrative correction of records under the statute in question "shall be final and conclusive on all officers of the Government, including review by the courts of the United States, except when procured by means of fraud." See H.Rep.No. 449, 82d Cong., 1st Sess., 6 U.S.Code Congressional and Administrative Service p. 2469. However, at the subcommittee hearings on this bill, members of the subcommittee expressed disapproval of the provision precluding judicial review. See *Hearings Before a Subcommittee of the House Committee on Armed Services on H. R. 1181,* 82d Cong., 1st Sess. 191–93. Accordingly, the subcommittee eliminated from the bill the words "including review by the courts of the United States" and explained to the full committee that this was done "so that under appropriate circumstances the courts of the United States may review these matters." Id. at 450; and see H.Rep.No. 449, 82d Cong., 1st Sess. 3. In addition, the finality provision was made applicable to record corrections generally rather than monetary settlements alone. Thereafter, the bill passed both the House and the Senate without any language prohibiting judicial review and without further mention of that subject.[5] The Senate report did contain the significant statement that the finality provision was intended to make it clear that the authorized administrative correction action was "not subject to review by other Government departments." S.Rep.No. 788, 82d Cong., 1st Sess. 2. The original statute with the subsequently added provision concerning finality is the present section 1552 of title 10.

In the light of this history we are confident that the finality provision as it now exists—"* * * a correction under this section is final and conclusive on all officers of the United States"— was not intended to preclude any otherwise proper judicial review of departmental action upon a petition to change the type of a discharge.

Beyond the persuasiveness of this legislative history, an inferior court must be guided by a recent holding of the Supreme Court that a federal court may review and correct administrative action under section 1552 of title 10, where it is alleged and proved that the discharge which the Department refused to change was itself illegal. Harmon v. Brucker, 1958, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed. 2d 503.[6] This decision is in line with others which find no inconsistency between legislatively declared "finality" of administrative action and judicial correction of administrative action found to be violative of constitutional right, otherwise illegal or without basis in fact. E. g. Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; and see generally Davis, Unreviewable Administrative Action, 1954, 15 F.R.D. 411.

The appellee has attempted to distinguish the Harmon case on the ground that the "general" discharge there had issued pursuant to administrative decision while the dishonorable discharge here was mandated by a now final and not directly reviewable order of court-martial. However, we have al-

---

5. For a more detailed discussion of this legislative history, see Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, 1957, 57 Col.L.Rev. 917, 967–969.

6. In a different context the Court of Claims has even substituted its judgment as to the requirement of "justice" in all of the circumstances for the contrary view of the Secretary of the Army in his authoritative disposition of a disputed matter. Prince v. United States, 1954, 119 F.Supp. 421, 127 Ct.Cl. 612.

ready pointed out that in section 1552 of title 10, Congress gave the Secretaries of the military departments power to change any discharge as justice might dictate. No exception was made of those ordered by courts-martial. See 40 Ops. Atty. Gen. 504, 506–7. Indeed, in this case the defendant Secretary contends only that the departmental decision not to change the plaintiff's discharge was a matter of unreviewable administrative discretion, and not that the Secretary lacked power to grant relief. We think it follows that Judicial power to inquire into allegedly wrongful and detrimental refusal to grant deserved relief under section 1552, as recognized in the Harmon case, is not dependent upon the source or type of the original discharge.

Finally, we come to the question whether in the circumstances of this case the matter of changing the type of discharge given the appellant was within administrative discretion or involved a plain duty to grant relief, enforceable by an action in the nature of mandamus under section 1361 of title 28.

■ It is not contended that the appellant's dishonorable discharge has any legal basis or justification other than the court-martial sentence ordering such a discharge.[7] Its only standing is as part of punishment pursuant to a conviction of crime. When the Correction Board and the Secretary examined this discharge and its circumstances in order to determine whether justice required the substitution of a different type of discharge, the record established very clearly that due process of law had been denied the appellant in the trial which resulted in his conviction. We have already mentioned the memorandum of a judge advocate to that effect which had been added to the file of this case in 1947. Accordingly, the correcting authorities should have viewed this conviction as providing no legal justification for a punitive sentence. Congress having authorized administrative reconsideration and change of sentences that had become final, we think it was as much the duty of the Secretary and the Correction Board, as it would have been of a court empowered to entertain a collateral attack upon some final decision, to treat as void a sentence thus unconstitutionally imposed. Cf. United States v. Brown, 1907, 206 U.S. 240, 27 S.Ct. 620, 51 L.Ed. 1046; Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

For these reasons we conclude that the court below erred in entering summary judgment for the defendant. A cause of action within the court's jurisdiction had been stated and on the uncontroverted facts the plaintiff was entitled to relief.[8]

The judgment will be reversed and the cause remanded for the entry of a mandatory injunction directing the defendant to cause the plaintiff's petition for correction of sentence to be reconsidered and appropriate relief to be granted in recognition that the court-martial sentence ordering the plaintiff's dishonorable discharge was invalid and cannot now justify administrative refusal to change that derogatory record.

Judgment will be entered vacating the judgment of the District Court and remanding the case for further proceedings consistent with this opinion.

7. At the time of appellant's discharge, the controlling regulation provided that "dishonorable discharges may be given only by approved sentences of general courts-martial and are appropriate for serious offenses warranting dishonorable separation as included punishment". Bureau of Naval Personnel Manual c. 10, § 3, par. C-10302(5) (1948). See generally, Pasley, Sentence First—Verdict Afterwards: Dishonorable Discharges Without Trial By Court-Martial? 1956, 41 Corn.L.Q. 545.

8. While this observation is no part of the basis of our decision in this case, we think we should add in fairness to the appellant that the court-martial record, including the testimony of the injured sailor who was the prosecuting witness, leaves room for serious doubt whether the appellant participated in the assault as charged.