David R. **ROBSON**

v.

**UNITED STATES** of America.

Civ. A. No. 43659.

United States District Court
E. D. Pennsylvania.

Feb. 13, 1968.

Herman I. Pollock, Aurelio Munoz, Defender Assn. of Philadelphia, Philadelphia, Pa., for petitioner.

Drew J. T. O'Keefe, U. S. Atty., Austin Hogan, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

## OPINION AND ORDER

WOOD, District Judge.

This petition by a state prisoner confined at Graterford State Correctional Institution presents novel and intricate questions of federal procedural and constitutional law. Robson essentially is demanding that the Court vacate a court-martial conviction obtained in England, although he has already completed the sentence. He was subsequently convicted in Clearfield County and is now serving a sentence of 2½ to 5 years. He contends that the court-martial conviction was obtained by the introduction of evidence seized in a manner contrary to the Fourth Amendment and that the state court used that conviction to increase his sentence.[1]

### JURISDICTION

Petitioner argues that this Court can grant relief either by a writ of coram nobis or by a writ of habeas corpus.

1. Coram nobis is not an appropriate remedy. Its use is restricted to the court which imposed the penalty. This writ was originally designed to bring to the Court's attention errors of fact after a judgment had been entered.[2] It is also not true that all relief is thereby denied to petitioner, if he is no longer in custody. He can seek relief on a suit for back pay,[3] by means of a declaratory

---

1. A copy of the judgment as entered by the Court will be found at the end of this opinion. The record of the state court proceedings were filed in the Court of Appeals for the Third Circuit in connection with United States ex rel. Robson v. Brierley, 385 F.2d 170. That petition for a writ of habeas corpus alleging various constitutional defects in Robson's plea of guilty was denied by the Western District of Pennsylvania.

2. See generally, Freedman, "The Writ of Error Coram Nobis", 3 Temple L.Quart. 365 (1929); 18 Am.Jur.2d, p. 445; 5 Orfield, Criminal Procedure under the Federal Rules, § 33:101 et seq.

3. Augenblick v. United States, 377 F.2d 586 (Ct. of Claims 1967).

judgment[4] or a mandamus petition[5] or by administrative action.[6]

■■■ 2. Habeas corpus is designed to relieve a prisoner from restraint in violation of federal law. The writ has been employed to release a prisoner whose only complaint was that his sentence was invalidly imposed. Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). U. S. ex rel. Jackson v. Myers, 374 F.2d 707 (3rd Cir. 1967). Its use herein can be justified by the contention that the state court considered a conviction which allegedly violated the Constitution. Since this presents a substantial claim of a federal question, this Court has jurisdiction to consider whether petitioner is being illegally restrained. State remedies appear to be precluded by the limited nature of collateral review by state courts. Commonwealth v. Thompson, 389 Pa. 382, 402–404, 133 A.2d 207 (1957).

## COLLATERAL REVIEW OF COURT-MARTIAL CONVICTIONS

The extent to which a Federal Court may collaterally review a court-martial conviction is the subject of a diversity of views and is in a state of flux.[7] On the one hand, the military authorities have expertise and specialized knowledge with military affairs, must maintain a critical discipline in the armed forces and have been given specific jurisdiction by the Constitution and Congress. Alternatively, it cannot be gainsaid that the military should not be permitted to act arbitrarily or that soldiers, most of whom are civilians at heart, should be denied the fundamentals of due process because of their status.

■■■ Collateral attacks are obviously permitted when the Board had no jurisdiction of the person or of the crime or when acting far afield of its statutory powers. Most recently, generally, Federal Courts have upset convictions when the integrity of the fact-finding process has been destroyed by the gross lack of due process. See, e. g. Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965) (Hastie, J., by designation), where counsel represented two defendants who had a conflict of interests.

■■■ In compliance with these principles, we hold that in the interests of precluding undue intervention in military affairs, the Federal Court has no jurisdiction to prescribe exclusionary rules for the illegal search and seizure at least where there has been no conduct such as shown in Rochin v. People of State of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The military or Congress are better able to fashion remedies for illegal conduct than are the courts in these affairs.[8] Moreover, because of the peculiar relationship which the United States has with its men in the armed forces, it is clear that the rights of privacy protected by the Fourth Amendment do not have the same urgency as called for by those in civilian life as against non-military police.

## MERITS

Petitioner urges that his court-martial conviction was unconstitutionally obtain-

4. Gallagher v. Quinn, 124 U.S.App.D.C. 172, 363 F.2d 301 (1966).

5. Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965) (Hastie, J. by designation).

6. 10 U.S.C. § 1552.

7. See Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) and Burns v. Wilson, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953) (opinion of Frankfurter, J.); Kennedy v. Commandant, 377 F.2d 339 (10th Cir. 1967); Augenblick v. United States, supra, fn. 3; Ashe v. McNamara, supra, fn. 5. See generally, Warren, "The Bill of Rights and the Military", 37 N.Y.U.L. Rev. 181 (1962) and Henderson, Courts-Martial and the Constitution: The Original Understanding, 71 Harv.L.Rev. 293 (1957); Wiener, Courts-Martial and the Bill of Rights: The Original Practice, 72 Harv.L.Rev. 1, 266 (1958).

8. In fact, there are guarantees in the courts-martial system for freedom from unreasonable searches and seizures as well as other constitutional provisions. Wiener, 72 Harv.L.Rev. 266, 295 (1958) and Crawford v. Davis, 249 F.Supp. 943 (E.D.Pa.1966).

ed because evidence seized by the British police in a fashion which would be contrary to the Fourth Amendment was used against him at the trial.

On the merits, we must also deny relief to petitioner. The Fourth Amendment does not apply in any way to foreign police. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Weeks v. U. S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) decided that the only practical way to enforce the Fourth Amendment's ban against unreasonable searches and seizures by those on whom it was binding was to exclude from the trial any evidence so obtained. There was no violation of the mandate of the Fourth Amendment in this case, and accordingly no reason to exclude the evidence. Brulay v. United States, 383 F.2d 345 (9th Cir. 1967). Secondly, until Elkins v. U. S., 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), federal use of evidence illegally seized by state officers was permitted. Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) established the rule of non-retroactivity for convictions obtained before Mapp, supra. Similarly, since Elkins was not the law when the conviction was obtained, we hold that it does not retroactively affect convictions obtained before Mapp. To hold that Elkins is not retroactive does not mean that each time the conviction is used to enhance the sentence or to deny petitioner a job, the evidence is used against him. The answer is that the evidence does not affect the conviction and as such, the conviction may be used in any way. This differs from the situation where the conviction itself although void is used to enhance punishment. See Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The fairness of the trial itself is not under attack here.

We wish to commend Aurelio Munoz, Esquire, who displayed a high degree of legal skill and ingenuity in representing petitioner when appointed by the Court.

## APPENDIX

### IN THE COURT OF QUARTER SESSIONS OF CLEARFIELD COUNTY, PENNSYLVANIA.

COMMONWEALTH
-vs-
DAVID RONALD ROBSON

No. 29 November Sessions, 1963

### SENTENCE

NOW, March 16, 1964, the defendant having entered a plea of guilty to the offense of sodomy, the sentence of the Court is that defendant pay a fine of $1.00 and costs of prosecution, and in view of his prior record, it being the opinion of the Court that he will be aided thereby to the further sentence of the Court that he undergo imprisonment in the Western Correctional Diagnostic and Classification Center at the Western State Penitentiary at Pittsburgh, Pennsylvania, in separate and solitary confinement at labor, for and during the term the minimum of which shall be two and one-half years and the maximum of which shall be five years, in such penal or correctional institution as shall be designated by the Deputy Commissioner for treatment; and shall therein be kept, fed, clothed, treated and governed as is provided by law. The fine and costs to be paid through the Probation Office of Clearfield County. Sentence to commence as of October 2, 1963, he having been incarcerated since that date in the Clearfield County Jail. Defendant to stand committed until the sentence of the Court is complied with.

BY THE COURT,

John A. Cherry
President Judge