Robert M. OWINGS, Plaintiff,

v.

SECRETARY OF the UNITED STATES AIR FORCE, Defendant.

Civ. A. No. 2381–65.

United States District Court
District of Columbia.

March 22, 1969.

Robert H. Reiter, Washington, D. C., for plaintiff.

Joseph M. Hannon, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM-ORDER

GASCH, District Judge.

This matter was heard on cross motions for a summary judgment of plaintiff's complaint seeking reinstatement in the United States Air Force or declaration that his discharge was void, correction of his military records and $50,000 in damages. It appears that there are no issues of material fact in dispute and that on the undisputed facts in the record plaintiff is entitled to relief as a matter of law.

## I–FACTS

The Memorandum of the Examiner of the Air Force Correction Board states the following preliminary facts:

"As a Special Agent of the office of Special Investigations, he [plaintiff] was assigned to a responsible position in Counter-Intelligence Security at Itazuke Air Base, Japan, where because of his grade (Staff Sergeant) he frequented the NCO Club. The Club possessed several slot machines. Previously, applicant was unfamiliar with such devices, but he 'became fascinated by them and indulged himself as one of the heaviest, if not the heaviest, player in the organization.' Between January and September, 1959, he wrote approximately $10,000 in checks to the club; approximately $9,150 in checks were honored by his bank in the U. S., and the remainder were returned unpaid to the club by his bank. The proceeds from all checks written, those honored and those unhonored, were placed in slot machines or lost at other gambling devices located throughout the club." (At 12. See also Memorandum at 3.)

More particularly it appears that by May of 1959, plaintiff had lost approximately $1,500 gambling and began to rely on the time it would take his checks to reach his United States bank to sell personal property or obtain loans from family and friends to cover them. The manager of the NCO Club, who profited from the gambling done there and who was aware of plaintiff's difficulties, endorsed a note by the plaintiff for a loan at the local credit union. When plaintiff reached a point near bankruptcy, he issued a stop order to his bank on checks

payable to the NCO Club, apparently to insure that certain checks drawn to cover expenses of his wife and children in the United States would be honored. Plaintiff swore the stop order was temporary and that he withdrew it later. The bank had no record of the stop order being withdrawn. Plaintiff's efforts to cover his checks failed.

On March 16, 1960, plaintiff was convicted by a special court-martial of seven counts of larceny totaling $850.00. Evidence established that the subject matter of the larceny counts were seven checks drawn two weeks after plaintiff had sent the stop order to his bank. The checks were payable to the NCO Club and were given for slugs which were usable only in the Club. Plaintiff used them for gambling. Plaintiff was sentenced to be discharged with a bad conduct discharge to forfeit $70.00 per month for three months, to be confined at hard labor for three months and to be reduced to the rank of airman basic.

On June 27, 1960, the convening authority exercising general court-martial jurisdiction, acting pursuant to Article 64 UCMJ (10 U.S.C. § 864), reduced the forfeiture to $43.00 per month and otherwise affirmed the sentence. A Board of Review acting under Article 66, UCMJ (10 U.S.C. § 866), found that the evidence was sufficient in fact and in law only to support a lesser included offense of wrongful appropriation (Art. 121, UCMJ; 10 U.S.C. § 921) since plaintiff did not intend to keep the money permanently; but, approved the sentence as appropriate. The Judge Advocate General concurred in the decision of the Review Board.

On October 10, 1960, plaintiff signed a statement indicating he did not wish to appeal to the Court of Military Appeals. On October 28, 1960, plaintiff notified the Air Force and the Court of Military Appeals that he had changed his mind, that he wished to appeal, and that he

wanted counsel to be appointed. On November 4, 1960, plaintiff withdrew this application. In 1965, apparently after noting certain news media reports and investigations of gambling and prostitution on military bases, plaintiff requested the Air Force to appoint him counsel to petition for a reopening and review of his case. On July 29, 1965, the petition for review was denied.[1]

Plaintiff filed this action on November 3, 1965. The Court granted defendant's motion to dismiss on February 1, 1966. Plaintiff appealed. The Court of Appeals entered an order that plaintiff's petition:

" * * * is denied without prejudice to the filing by petitioner of a new application in the District Court predicated upon a showing that the remedies under 10 U.S.C. 1552 and 1553 have been sought and denied, if that be the fact. Without intimating any decision thereon, we believe that the possibility of jurisdiction under the principle of Ashe v. McNamara, 355 F.2d 277 (4th Cir. 1966) [sic] warrants consideration by the District Court." [2]

Plaintiff applied to the Air Force Board for the Correction of Military Records arguing inter alia that his discharge was improper since there had been no finding of an intent legally sufficient to support the charges, and that under United States v. Wallace,[3] plaintiff was found guilty of acts not constituting a crime. The hearing was delayed seven months and at the time it was held plaintiff could not be present. No member of the Board and no member of its staff present at the hearing had had legal training. Without notice to the plaintiff, the Board submitted a transcript of the hearing to the Air Force Judge Advocate General whose subordinates prosecuted the case and who rendered an ex-parte opinion that plaintiff's counsel's argument "is erroneous in law and in fact;"

1. See, 10 U.S.C. § 876.

2. Owings v. Secretary of the USAF, Misc. No. 2746 (D.C.Cir. June 1, 1966).

3. 15 UCMA 650 (1966).

that "many reviews both judicial and administrative, of his conviction and sentence have failed to uncover any indication of error or injustice;" and that "plaintiff has not submitted any new evidence in the hearing." The opinion was adopted by the Board. Plaintiff has returned to this Court to seek a review of the Board's decision.

## II–JURISDICTION

■ Plaintiff has exhausted his administrative remedies by obtaining a review of his discharge before the Air Force Board for the Correction of Military Records. (Hereinafter "the Board").[4] This Court's jurisdiction is predicated in part on the enabling legislation of that Board.[5] Because Congress wished to invest the Board with broad authority, however, the statute is vague.[6] It requires the Secretary of Defense acting through a civilian Board to "correct any military record of that department when he considers it necessary to correct an error or remove an injustice."[7] It is beyond question that this Court has jurisdiction to review the actions of that Board.[8] The scope of review permitted by this jurisdiction, however, is uncertain.[9]

In Van Bourg v. Nitze, our Court of Appeals examined "the statutes and regulations governing the administrative proceedings we are called upon to review to determine if the Navy departed from the prescribed manner in which a review of the nature of a discharge could be had."[10] A somewhat similar approach was taken in the more recent case of Kennedy v. Secretary of the Navy.[11] There the Court of Appeals found a discharge invalid because it was based on matters not in the armed forces service record and consequently violated the statutory standards governing discharge.[12]

Ashe v. McNamara, specifically noted by the Court of Appeals in its earlier order in this case as a possible jurisdictional base, approached the scope of jurisdiction in terms of the statute.[13] It held that the District Court could review the Board and could under 28 U.S.C. § 1361 compel it to correct an injustice where a discharge which the Department refused to change was itself illegal because defendants with fundamentally inconsistent defenses were forced to be represented by the same counsel.[14] It was illegal because it was an unconstitutional denial of the right to counsel. Similarly, our Court of Appeals noted in Van Bourg v. Nitze that "it is the duty of the judiciary to inquire into an allegedly wrongful and detrimental re-

4. 10 U.S.C. §§ 1552, 1553 (1967); Owings v. Secretary of the USAF, Misc. No. 2746, (D.C.Cir. June 1, 1966).

5. 10 U.S.C. §§ 1552, 1553. Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965); Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, 57 Colum.L.Rev. 917, 966, 969 (1957).

6. Id.

7. 10 U.S.C. § 1552.

8. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Kennedy v. Secretary of the Navy, 401 F.2d 990 (D.C.Cir. July 18, 1968); Van Bourg v. Nitze, 388 F.2d 577 (D.C.Cir. 1967); Bland v. Connally, 110 U.S.App. D.C. 375, 293 F.2d 852, 855 (1961); Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965). See, Jones, Jurisdiction of

the Federal Courts to Review the Character of Military Administrative Discharges, 57 Colum.L.Rev. 917, 966, 969 (1957). Cf. United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537. See also, Gentila v. Pace, 90 U.S. App.D.C. 75, 193 F.2d 924 (1951); Hertzog v. United States, 167 Ct.Cl. 377 (1964).

9. Compare Ashe v. McNamara, supra, note 8, with United States v. Augenblick, supra, note 8, and Van Bourg v. Nitze, supra, note 8.

10. Van Bourg v. Nitze, supra, note 8, 388 F.2d at 563–564.

11. 401 F.2d 990 (D.C.Cir., July 18, 1968).

12. Id. 401 F.2d 990.

13. Ashe, supra, note 8.

14. Id.

fusal to grant deserved relief." [15] Citing Prince v. United States,[16] the First Circuit in *Ashe* pointed out that the Court of Claims in a different context "has even substituted its judgment as to the requirement of 'justice' in all of the circumstances for the contrary view of the Secretary of the Army in his authoritative disposition of a disputed matter." [17] Subsequently, however, the Supreme Court has held that the jurisdiction of the Court of Claims in collateral attacks on courts-martial is limited to the correction of errors of constitutional proportions.[18]

■ It would appear from these authorities that the scope of review by this Court is limited to: (1) the procedural history of the case including a determination of whether the service followed the statutes and regulations by which it is bound; and (2) the record in the case including its merits to the extent a decision might have been without basis in fact or to the extent an issue of constitutional proportions may be raised. It would be inconsistent both with the principles which invest this Court with jurisdiction and with the development of the Uniform Code of Military Justice and the Court of Military Appeals for a District Court to undertake what might become in effect a trial de novo.[19]

### III—MERITS

■ Plaintiff urges three grounds to support his motion for summary judgment. First, he argues that the proceedings before the Board were procedurally improper. His petition to that Board rested on two "technical" legal points

which independently he again asserts here as second and third grounds for his summary judgment. He argued there, and here, that plaintiff was charged with the crime of larceny, which requires proof of specific intent, and that when the reviewing panel found that plaintiff had no intent to appropriate the funds permanently, they necessarily excluded the possibility that he be found guilty of another crime, with which he was not charged, but which also required an intent.[20] Moreover, he argued, under the decision of the Court of Military Appeals in United States v. Wallace, the acts which he committed could not under military law be a crime.[21] Despite the fact that the Board was aware in advance that these legal arguments were the foundations of his petition, no member of the Board hearing the case had legal training and the record discloses confusion over the legal theory upon which the petition was based. Perhaps due to this confusion, and without notice to plaintiff's counsel, the Board referred the matter to the Air Force Judge Advocate General for an opinion and then adopted his conclusions as theirs. The Court does not understand that plaintiff is here urging that the seeking of advice from the Judge Advocate General is under all circumstances an impermissible procedure for the Board. The statute and regulations do not appear to foreclose such a procedure altogether. Rather, in these circumstances plaintiff argues, the reference to the Judge Advocate General constituted an unlawful delegation of the decision making authority of the Board. In future cases, this issue may be avoided by requesting legal opinions from opposing counsel. Alternatively,

15. *Van Bourg, supra,* note 8, 388 F.2d at 563.

16. 119 F.Supp. 421, 127 Ct.Cl. 612 (1954).

17. *Ashe, supra,* note 8, 355 F.2d at 281 n. 6.

18. United States v. Augenblick, *supra,* note 8.

19. *Id. Contra* Jones, Jurisdiction of the Federal Courts to Review the Character of Military Administrative Discharges, *supra,* note 8.

20. *But see* Article 121, UCMJ (10 U.S.C. § 921).

21. United States v. Wallace, 15 USCMA 650, 36 CMR 148 (1966).

he argues that the decision was necessarily arbitrary and capricious. Although there appears to be merit in plaintiff's position on this point,[22] the Court need not reach it for more fundamentally it appears that the Board failed to recognize the effect of the *Wallace* decision and the resulting fact that plaintiff was found guilty of an offense which under military law is not a crime.

In United States v. Wallace, the Court of Military Appeals held that "this court on the basis of public policy, consistently refused to sustain criminal proceedings based upon the issuance of worthless or subsequently dishonored checks in connection with gambling games."[23] The court went on to cite from its opinion in United States v. Walter:[24]

"It is clear from what we have said above that gambling is against public policy and that the subjects of the alleged larceny were engaging in this illegal activity with the accused * * * We will not act as the 'strong arm' of a collection scheme for gamblers within the service in order to intimidate payment by 'debtors' of void gambling debts. The fact that one 'welshes' on his gambling debts and becomes known as a 'welsher' is not a crime."[25]

The Court in *Wallace*, after reviewing the *Walter* case and other authorities continued:

"The sum of these cases is that the issuance of a worthless check in a gambling game or as a means of facilitating a gaming transaction cannot be made the basis of a criminal prosecution for allegedly 'dishonorable' conduct, as here charged. As we have seen above, judicial cognizance of such prosecutions is denied, whether the game be legal or illegal. And there can be no doubt that the checks here involved were issued to the club to facilitate accused's play of its gambling devices, and were not therefore check transaction[s] entirely separate from the gambling activity.

"One cannot deposit a check in a slot machine. It is necessary to use coins for that purpose, rolls of which were here given the accused by the club bartender in return for his checks, such rolls being maintained on hand for that use and the accused, in fact, so using them.

"The case here also is nonetheless gambling, although one of the parties to the wager is an instrumentality of the United States."[26]

The holding of *Wallace* is unequivocal. The facts are remarkably similar to those of the case now before the Court. Indeed the statement of facts related by the examiner of the Air Force Correction Board is within several words of being a direct quote of the relevant facts stated by the court in *Wallace*.[27]

The Government seeks to distinguish the case at bar from *Wallace* by arguing that there is no evidence in the record to indicate that Owings used the checks or all of their proceeds for gambling. As indicated from the above, the Correction Board felt and the record reflects, on the contrary, that all or nearly all of the proceeds of the checks were club slugs used in gambling and that the

---

22. *Cf.* Hutter v. United States, 345 F.2d 828, 170 Ct.Cl. 517 (1965); Weiner v. United States, 148 Ct.Cl. 445, 454 (1960); Suter v. United States, 139 Ct. Cl. 460, 471, 153 F.Supp. 367, 369 (1957).

23. United States v. Wallace, *supra*, note 21, at 652.

24. 8 USCMA 50, 23 CMR 274.

25. United States v. Wallace, *supra*, note 21, at 652.

26. *Id.*, at 653.

27. *Compare* United States v. Wallace, *supra*, note 21 at 651 *with* preliminary facts quoted at p. 2 of this opinion from the Report of the Board.

manager of the club was aware of Owings' trouble and sought to facilitate Owings' access to money which was used for gambling. These are precisely the facts to which the Court in Wallace referred when it stated that "the Club gambled on the accused having money in the bank and lost." [28]

The Government argues also that since the *Wallace* decision was subsequent to the court-martial it could not affect the outcome of this case. That is incorrect. Here, the Court is reviewing the decision of a Board of Correction of Military Records and the issue must be viewed from that standpoint. In this respect the consequence of *Thorpe v. Housing Authority* is unavoidable.[29] There the Supreme Court stated:

> "The general rule, however, is that an appellate court must apply the law in effect at the time it renders its decision. * * * The same reasoning has been applied where the change was constitutional, statutory, and judicial." (Citations omitted.) [30]

The Board for the Correction of Military Records was bound by the holding in *Wallace* and could not overlook the fact that the highest judicial authority for the military had indicated that the acts for which this plaintiff was discharged were not, should not and will not be considered violations of the UCMJ.[31] It appears that this is precisely the circumstance in which the Correction Board should act to correct an injustice of constitutional proportions. There can be no doubt that the Board is bound by the pronouncements of the highest judicial authority of the military just as it is bound by their enabling statute and regulations.[32]

Plaintiff has requested alternative forms of relief. Accordingly, the Court will receive proposed orders by both parties.

---

**28.** United States v. Wallace, *supra*, note 21, at 653.

**29.** Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L. Ed.2d 474 (Jan. 13, 1969).

**30.** *Id.;* at 281, 89 S.Ct. at 526, text and note 39–42.

