960 So.2d 879 (2007)
Jacqueline M. ALSTON, Appellant,
v.
Ann C. ALSTON, Appellee.
No. 4D06-286.
District Court of Appeal of Florida, Fourth District.
July 18, 2007.
Stan L. Riskin of Stan L. Riskin, P.A., Plantation, for appellant.
Steven A. Mason of Law Offices of Steven A. Mason, P.A., Hollywood, for appellee.
STONE, J.
Jacqueline Alston (Second Wife) appeals a summary final judgment in favor of the plaintiff, Ann Alston (Former Wife). We reverse.
Former Wife brought suit after she was denied military survivor benefits by the Army Board for Correction of Military Records. The marital settlement agreement (MSA), incorporated into the judgment of dissolution of her marriage to Colonel Alston, provided that she would be entitled to maximum military survivorship benefits upon his death.
The military survivor benefit plan allowed payment to a former spouse after certain conditions were met. In this case, it required submission of military form DD 2656-1 within one year of the Alston's divorce in 1999. Unaware of this condition, Colonel Alston submitted the correct form in 2004, nearly four years after the Army's deadline. Colonel Alston had remarried in 2000. Second Wife was one of the witnesses to his ill-timed execution of form DD 2656-1. The colonel died a month after he submitted the form.
Former Wife's application for survivor benefits was denied by the Department of the Army due to the colonel's untimely filing of the form. A subsequent appeal of this decision was denied on the same grounds; the "Discussion and Conclusions" section of the military's order ends with the following paragraph:
4. The [former service member] had remarried in June 2000. After his first anniversary, his [second] wife became the legal beneficiary of the [service benefit plan]. Absent consent of the widow to correct to FSM's records to provide for former spouse coverage in lieu of spouse coverage, to grant the applicant's *881 request at this date would constitute an unconstitutional taking from his widow.
(Emphasis added)
In this suit, Former Wife alleges that Second Wife was unjustly enriched by receipt of the military benefits. She seeks a mandatory injunction directing Second Wife to execute a consent to transfer of the survivorship benefit to Former Wife in accordance with the judgment of dissolution. Neither party argues that the military board ruled on any basis other than timeliness. Although the military board recognized the Second Wife could consent to Former Wife's claim, there is no indication that the military tribunal considered the issue decided and relied upon by the trial court in granting summary judgment, that by the act of witnessing the form, Second Wife, by inference, consented to a transfer to Former Wife.
We reverse the summary judgment because we conclude a waiver of Second Wife's right to the benefits cannot be inferred, without more, simply from the act of witnessing her husband's signature on the form. The only evidence supporting Second Wife's waiver acquiescence appearing in the record on appeal is the act of witnessing. This was the sole basis for the trial court's summary judgment. There is no indication or claim that there is evidence of additional circumstances regarding whether Second Wife's act of witnessing was a waiver of her rights.
As a matter of law, waiver requires knowledge of facts and intentional conduct. See Estate of Ballett, 426 So.2d 1196, 1199 (Fla. 4th DCA 1983). There is no evidence in the record that Second Wife even knew what the form was, what its implications or effect were or could be, or that she intended anything whatsoever by her witnessing other than attesting to her husband's signature. Neither is this a case where it can be said that Second Wife should have known that her signing as a witness would constitute acquiescence.
We reject, however, Second Wife's arguments that the military board decision must control the outcome of this case and that the trial court usurped the jurisdiction of the military board. The military board decision did not address the relief claimed in this case by Former Wife. The board ruled solely on the basis of timeliness. Whether the military would recognize a judgment of the trial court mandating Second Wife's consent is not for us to resolve in this appeal.
Therefore, we reverse and remand for consideration of First Wife's claim on the merits.
MAY, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring.
This case brings us a rare stew. Judge Stone's opinion outlines the basis for finding error in the summary judgment and for remanding the case to the trial court for a new determination. I write to add some views of my own on this strange controversy.
The former wife's complaint alleged that her marriage was terminated by a final judgment in the same circuit court, case number 99-3902(39), entered in April 1999 before Judge Vitale.[1] She alleged that under their "marital settlement agreement" (MSA) her husband transferred *882 part of his military retirement benefits to her, their agreement saying:
"11. Military Retirement. The Husband and Wife shall equally split 50/50 the Husband's net (after all deductions) military retirement payments held in the Husband's sole name; however the Husband shall be entitled to 100% of any disability payments. The Husband shall execute all documents necessary to assign and transfer the foregoing payments to the Wife. These payments shall continue in perpetuity notwithstanding the remarriage of the Wife. The Wife shall be entitled to the maximum survivorship benefits, which is understood to be approximately fifty-five (55%) percent payable upon the death of the Husband, notwithstanding the remarriage of the Husband."
She further alleged that the final judgment "ratified and approved" the MSA but did not allege that the final judgment explicitly enjoined him to do anything to have the Army recognize the MSA transfer of the survivorship benefit.[2] She did allege that her former husband's widow was being unjustly enriched by receiving the survivorship benefit he had previously transferred to her in the MSA, and prayed for a mandatory injunction requiring the widow to execute the proper form to carry out the transfer in the Army records. Most important as regards the summary judgment, she did not allege in any way that the widow had already consented by any previous act.
Apparently the former husband believed that he could not file the papers with the Army to recognize the transfer until he retired and then would have nine months in which to do so. Consequently he did not file the necessary papers with the Army until January 2004, about one month before he passed away. The Army rejected the filing, saying that it should have been filed with the Defense Finance and Accounting System within one year after the dissolution of marriage judgment.[3] The former wife then sought relief from a federal administrative tribunal, the Army Board for the Correction of Military Records (ABCMR), empowered to grant relief by amending Army personnel records when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). That Board denied relief, saying:
"Absent consent of the widow to correct the former service member's records to provide for former spouse coverage in lieu of spouse coverage, to grant the applicant's request at this date would constitute an unconstitutional taking from his widow."
The former wife reads that decision as an authorization to seek an injunction from the Florida state court requiring the widow to execute a consent form for the payment of the survivorship benefit to her. The circuit court in fact entered such a summary judgment in her favor, explaining:

*883 "The court finds that the defendant acquiesced in this relief when she signed the DD Form 2656-i as a witness on 11 January 2004, and that her acquiescence constituted a legal waiver of her claim to Colonel Alston's military retirement pay under the Army's SBP. Accordingly, she cannot object to the relief sought by the plaintiff in count II of her complaint."
I agree with Judge Stone that this analysis is in error. It decides an issue not raised in any pleading in this casenamely whether the widow acquiesced in the former wife's claim to the pension benefits by witnessing her husband's signature.
In this appeal, the widow argues that the principles of res judicata and estoppel by judgment bar the former wife's claim to the pension. Under Florida law, such pleas in bar may not be applied to persons who were not parties to the proceeding arising in the judgment said to bar the current claim. Here the "judgment" to be applied is from a federal agency, the ABCMR, and so the question is probably whether under federal law, not Florida law, its decision would be treated as binding in federal courts. I suspect that it would. See 28 U.S.C. § 1738 (requiring full faith and credit to decisions of courts); see also Hazen Research Inc. v. Omega Minerals Inc., 497 F.2d 151, 153 (5th Cir. 1974) (under § 1738 requiring every court within United States to give full faith and credit to judicial decisions of state courts, state courts are required to extend full respect to judgments of federal judicial tribunals within the states, in absence of any such direct statutory command); Owings v. Secretary of U.S. Air Force, 298 F.Supp. 849, 853 (D.D.C.1969), rev. on other grounds, 447 F.2d 1245 (C.A.D.C.1971) (court was limited to review of procedural history of case and to review of record; district court could not entertain a trial de novo); Moore v. Secretary of Army, 627 F.Supp. 1538, 1541 (D.Conn.1986) (fact that the ABCMR is required to fairly consider claims that record is incorrect under § 1552 does not mean that interested parties are entitled to de novo determination as to corrections of records in the district court, nor are they entitled to correcting action by the ABCMR merely because they say that record is incorrect; only right is the right to review of the ABCMR's action, test being whether such action was arbitrary or capricious). If the federal courts would not grant a trial de novo on the merits of an issue decided by the ABCMR, I do not believe Florida courts should do so either. Doing so would allow a party to have a trial de novo in a state court of an issue settled by the ABCMR, when such relief is not available in the federal courts that review such decisions.
I do not mean to suggest for a moment that the reasoning of the ABCMR is persuasive. To say that enforcing the divorce judgment to effect the transfer then made would amount to an unconstitutional taking from the widow begs a very serious question. If the transfer was actually made previously with the entry of the Florida court's final judgment of divorce, what property interest in the pension did the widow lawfully have during the ABCMR proceedings that could be taken unconstitutionally? The ABCMR seems to think that the military record sought to be corrected  even if incorrect  nevertheless had the effect of making the widow's retention of benefits belonging to the former wife a justice needing no correction. But if property rights arising under state law are determined by a state judgment, how could this military tribunal do anything to affect a transfer of such rights? Isn't the authority of the ABCMR limited to correcting military records rather than transferring *884 property rights arising under state law?
In this state court case, on the other hand, the former wife seeks only a mandatory injunction requiring the widow to consent to the correction of the decedent's military records. In short, how could a new state court proceeding reach any result that conflicts with the decision of the ABCMR? Wouldn't the result sought by the former wife instead merely establish a condition that the ABCMR thinks is necessary for it to correct the military record? I certainly think so.
The ABCMR decision indicates that if the widow has so consented, then the record could in fact be corrected to reflect that consent. To be sure, I must say, this strikes me as very odd. Husband actually made the transfer years ago, and it was then ratified and confirmed by a state court having jurisdiction and the proper occasion to do so. Is there some reason why the ABCMR should not recognize that judicially established fact?
Full faith and credit works both ways. Is there some reason why the Army should not be required to accept as an established factone already carrying the authority of a state court judgmentthat the former wife is the proper owner of the survivorship benefits? Why should the widow's consent be even indicated, much less made necessary? The principle underlying the ABCMR's position seems to make the return of my property to me necessarily dependent on the consent of the person who illegally retains it. I recall an epigram from my earliest days as a lawyer to the effect that "military justice is to justice as military music is to music." See R. Sherrill, MILITARY JUSTICE IS TO JUSTICE AS MILITARY MUSIC IS TO MUSIC (1970). But even in such a system the rationale of the ABCMR is positively bizarre.
Hence, I do not agree that our state court is barred from entering such an injunction. It would not interfere in any way with the jurisdiction or unique responsibilities of the ABCMR. Indeed the ABCMR actually invited this very exercise of state court jurisdiction.
I agree with Judge Stone that nothing supports the rationale of the trial judge here. The complaint did not allege that the widow had already consented by prior voluntary act.[4] No, the former wife's complaint alleged only that he had transferred the right to her as part of their settlement of the dissolution of marriage action, that in receiving the transferred benefits the widow was being unjustly enriched at the expense of the former wife, and that the court should therefore order the widow to formally execute a written consent to the transfer to the former wife. I concur in *885 reversing the summary judgment because the court's rationale is legal error not based on any supporting allegation.
On remand the parties should proceed within the limited framework of what has been alleged. That is an equitable claim to a mandatory injunction requiring the widow to execute consent forms that would be recognized by the ABCMR as sufficient to pay survivorship benefits to the former wife. It seems to me that the only evidence necessary to make the former wife's case would be the final judgment of dissolution of marriage, which the court could judicially notice; evidence as to the proceedings in the ABCMR regarding the payment of the survivorship benefits to the widow instead of the former wife; and finally an opportunity for the widow to showif she canwhat lawful claim to such benefits she may have that she thinks is superior to the former wife's.
I do not believe that the failure of the husband to make a timely application for transfer within one year of the final judgment gives his widow a right to claim marital property from the first marriage previously transferred by him as part of his divorce. His failure to supply the Army with notice of the transfer cannot possibly amount to a waiver by the former wife of the property right she received in the final judgment of dissolution of marriage. It involved no conduct by her. The only effect of his failure to file military paperwork is to delay having the Army records record the true ownership of the survivorship benefits.
If the trial court should then decide that the widow is indeed being unjustly enriched and enters a mandatory injunction requiring the widow's consent, then the former wife will have the consent to return to the ABCMR (or such other federal tribunal as may be necessary) to have the military records speak the truth so that she can begin receiving the survivorship benefits.
NOTES
[1] She did not seek post dissolution relief before that judge who entered the final judgment to enforce the final decree by enjoining husband to timely file the paperwork necessary for the military to recognize the transfer.
[2] Her complaint alleges that true copies of both the Final Judgment and the MSA are attached, but the copies she has furnished us contain no such documents or attachments. I might add that this is a common failing, even among experienced appellate lawyers. Although a document such as a pleading or a contract is included in an appendix, more often than not the appendix copy fails to have the original attachments.
[3] As the final judgment of dissolution was entered April 8, 1999, that means that the deadline for the filing would have been April 7, 2000. The attempted filing in January 2004 was nearly four years late according to Army rules. The former husband's date of death is in February 2004.
[4] If the complaint had actually made such an allegation, then the widow's endorsement on the form might have some probative value. Even though I agree that merely witnessing a signature on a document does not ipso facto indicate a consent to its contents, her signature on this particular document could nevertheless be loaded with significance. It was signed by the husband barely a few weeks before he died. Did he then know death was imminent? Was the action then a voluntary, last effort on his part to perform this duty to his former wife? Is it possible he asked his second wife to witness the transfer of what might otherwise have been her property to his first wife without telling her the significance of the paper? Is it possible they had no discussion of the effect of the paper on the widow? It seems to me that the answer to these questions might yield a conclusion that the widow consciously participated in his attempt to have the Army recognize the transfer in accordance with his wishes and obligations. If so, why should she now be heard to take a contrary stance when he is unable to respond? Knowingly assisting and participating in bringing about a specific result is of significantly different quality than merely witnessing a signature.