**James V. LIMA**

v.

**The SECRETARY OF the UNITED STATES ARMY.**

Misc. No. 3898.

United States District Court, E. D. Pennsylvania.

June 23, 1970.

Edmund DePaul, Philadelphia, Pa., for plaintiff.

Victor Wright, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

This is an action in mandamus seeking to compel the Secretary of the United States Army to change the status of plaintiff's discharge from "dishonorable" to "honorable."

In January, 1945, the plaintiff was a Private in the United States Army and was stationed at Camp Gordon, Georgia. On January 6, 1945, he was arraigned and tried before a general court-martial for violations of the Articles of War, viz., absenting himself without leave (Article 61), fleeing arrest (Article 69), and disobeying orders of his superior officer (Article 64). He pleaded not guilty to these charges but was found guilty on all counts and was sentenced on January 18, 1945, to a dishonorable discharge, a forfeiture of all pay and allowances due or to become due, and a confinement to hard labor for ten years.[1] Subsequently, on automatic review, the Commanding Officer at Camp Gordon approved this sentence in part and remitted " * * so much of the sentence to confinement at hard labor as is in excess of seven years." Then, on February 5, 1946, by direction of the President, the Secretary of War ordered that " * * * so much of the sentence to confinement * * * as is in excess of three years is * * * remitted." Plaintiff was released after serving approximately 18 months of this sentence.[2]

On November 27, 1967, almost 23 years after the general court-martial, plaintiff requested review of his discharge by the Army Board for Correction of Military Records. 10 U.S.C. § 1552.[3] In his application, plaintiff stated:

"I believe my General Court Martial to be in error and unjust, i. e., I was denied the right to witnesses (in my behalf) and deprived of the assistance of competent legal representation which is constitutionally required."

This application, together with plaintiff's Army records, was reviewed by the Correction Board, which determined on February 7, 1968, that "insufficient evidence had been presented to indicate probable material error or injustice" and denied plaintiff's application.

1. The sentence of the court-martial noted: "Evidence of three (3) previous convictions considered."

2. Plaintiff was discharged on March 17, 1947.

3. The Correction Board "may correct any military record * * * when [it] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552.

Plaintiff then sought to have this determination reviewed by the United States Court of Military Appeals. However, plaintiff was informed, on March 27, 1968, that the Court of Military Appeals did not have jurisdiction, their reviewing powers being limited to court-martial convictions occurring on or after May 31, 1951.

[redacted] After exhausting these administrative remedies, the plaintiff petitioned this Court for a Writ of Habeas Corpus. Shortly thereafter, however, plaintiff moved for, and was granted, leave to amend his petition to plead the instant action for mandamus. The defendants argue to no avail that we lack jurisdiction over this matter since we elect to follow the persuasive analysis of the court in Ashe v. McNamara, 355 F.2d 277 (1st Cir. 1965), which held that district courts have jurisdiction in an action for mandamus pursuant to 28 U.S.C. § 1361 to review decisions by the Correction Board, including those which involve actions by courts-martial.

[redacted] In considering this petition for a writ of mandamus the district court may not look beyond the administrative record. Ragoni v. United States, Secretary of the Navy, 424 F.2d 261 (3rd Cir. April 10, 1970); Sanford v. United States, 399 F.2d 693 (9th Cir. 1968). This is so because in such a mandamus action we must determine whether the Correction Board acted arbitrarily or capriciously on the basis of the record before it. After a careful review of the administrative record in this case, we find that the Correction Board did not act arbitrarily or capriciously in denying the plaintiff's claim as there was substantial evidence in the record to support the Board's decision.

[redacted] As outlined above, plaintiff set forth two grounds in his application to the Correction Board for overturning his court-martial conviction, to wit, that he was denied the right to call witnesses in his behalf and that he was deprived of the assistance of competent legal representation. The *only* evidence which plaintiff relied on was the transcript of his court-martial.[4] However, that transcript offers the plaintiff no support and, in fact, flatly contradicts his allegations.

The transcript of the court-martial shows that the plaintiff here was represented by the counsel he requested and, before opening statements were made, plaintiff replied affirmatively to questions by the Trial Judge Advocate as to whether the plaintiff had had sufficient opportunity to discuss his case with counsel, to procure witnesses in his behalf, and to prepare a defense. The prosecution then put on two witnesses to establish the commission of the charged offenses by the plaintiff here. After the prosecution rested, defense counsel made a plea for leniency based on the accused's youth and lack of formal education. Then the following colloquy ensued:

> "Court: Private Lima, you don't wish to take the witness stand?
>
> Accused: No, sir.

4. In his application, plaintiff requested an appearance before the Correction Board. This request was not granted for the apparent reason that, since plaintiff seemingly placed total evidential reliance on the transcript of his court-martial, the Board determined a personal appearance unnecessary.

To satisfy ourselves that the Correction Board's denial of a personal appearance was not prejudicial to the plaintiff, we held a hearing to determine whether plaintiff, if he had personally appeared before the Board, could have presented other relevant evidence. We have concluded that he could not. In fact, at this hearing the plaintiff, who was represented by counsel, testified that he *could not remember* whether he was represented by counsel at his court-martial or whether he was afforded an opportunity to call witnesses in his behalf. Yet, in his application to the Correction Board and in the instant petition, plaintiff had alleged as fact that he was deprived of these elemental rights at his court-martial.

**340**

Court: Have you any witnesses you want to call?

Accused: No, sir, none at all.

Court: Have you any evidence you wish to put in the record?

Accused: No, sir."

The record before the Correction Board thus clearly shows that the plaintiff in the instant action was given an opportunity to call witnesses in his behalf but elected not to do so, and that, in light of the overwhelming evidence against the accused, defense counsel had little choice but to plead for mercy. The record evidence in this case totally contradicts plaintiff's allegations. Accordingly, the petition for a writ of mandamus is denied.