**James W. MULVANEY, Plaintiff,**

v.

**Hon. John STETSON, Secretary of the Air Force, Lt. Col. Benjamin Balser and Major Herbert J. Lindstrum, individually and/or as agents or servants of the United States Air Force, Defendants.**

**James W. MULVANEY, Plaintiff,**

v.

**Max CLELAND, Administrator, Veterans Administration, Defendant.**

Nos. 78 C 3019, 78 C 3172.

United States District Court,
N. D. Illinois, E. D.

May 29, 1979.

James W. Mulvaney, pro se.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

In these two related *pro se* cases, plaintiff has brought suit against the Air Force and the Veterans Administration. In his suit against the Air Force, plaintiff seeks to have his general discharge changed to an honorable discharge and all unfavorable discharge material expunged from his military record. Plaintiff also seeks damages from the Air Force and the two officers who allegedly conspired to fabricate the evidence upon which plaintiff was discharged from the Army as an undesirable. In plaintiff's second suit, he seeks to recover medical benefits denied him by the Veterans Administration.

Plaintiff enlisted in the Army in October, 1942. When he was discharged in July, 1945, he was a private in the Army Air Corps serving as a military policeman at Lincoln Army Air Field, in Lincoln, Nebraska. Plaintiff was given an undesirable discharge from the Army after a Board of Officers determined, following a hearing,

that he possessed "habits and traits of character which render his retention in service undesirable." Army Regulation 615–368. Plaintiff alleges that the evidence adduced at the hearing was false and that the hearing was designed to "railroad" him out of the service.

Plaintiff states that at the time of his difficulties with the Army, he, a lowly private, was having an affair with the wife of a colonel. Upon learning of plaintiff's sexual insubordination, one of the colonel's colleagues, Major Lindstrum, became determined to remove plaintiff from the military. According to plaintiff, Lindstrum gave plaintiff the choice of accepting an administrative undesirable discharge or being court martialled, for unspecified crimes, with an attendant long jail sentence. Plaintiff chose the former and cooperated with Lindstrum's plan by fabricating evidence to convince the Board of Officers that plaintiff was unfit for military duty.

The following evidence was introduced at the hearing: Lieutenant Colonel Balser, Chief of the Section of Neuropsychiatry, recounted evidence given to him by plaintiff and verified by plaintiff's sister. On the basis of this information Balser diagnosed plaintiff as "constitutional psychopathic state, emotional instability and criminalism" with no chance of rehabilitation. Plaintiff's exhibit 5. Major Lindstrum and a Private Bunce, like plaintiff a military policeman, both testified that plaintiff had a volatile temper. Lindstrum cited two incidents as examples. Plaintiff's exhibit 7. In the first incident, plaintiff allegedly fired his weapon at another military policeman while on duty. Private Winkle, the target of this alleged shot, corroborated Lindstrum's testimony by stating that plaintiff had fired his pistol at Winkle when Winkle approached the guardhouse where plaintiff was on duty. Plaintiff's exhibit 14. Private Bunce, who was often on duty at the same time as plaintiff, corroborated the story to some extent by saying that he once saw plaintiff fire his weapon for no apparent reason. Plaintiff's exhibit 12.

The second incident cited by Lindstrum occurred when the colonel's wife and plaintiff met at the guardhouse where plaintiff was on duty. Plaintiff's wife arrived during the tryst, and, upon discovering the colonel's wife, began fighting with plaintiff. The colonel's wife departed. Plaintiff and his wife continued their dispute in plaintiff's car, during which plaintiff allegedly struck his wife on the head with his pistol, injuring her slightly. Plaintiff's exhibit 7.

Plaintiff now contends that virtually all of this evidence was fabricated. He admits having cuckold the colonel and admits arguing with his wife after the guardhouse encounter, but denies that he ever struck his wife with his pistol. Plaintiff also denies ever firing his weapon at Private Winkle. And of course he denies the psychiatrist's diagnosis that he was suffering a "constitutional psychopathic state, emotional instability and criminalism."

In 1974, almost thirty years after the event, certain of those who had contributed evidence at plaintiff's discharge hearing signed a series of notarized statements retracting or explaining their earlier statements. Plaintiff's exhibits 11–14. Mr. Winkle stated that he had fabricated the testimony that he gave in 1945 with respect to the alleged shooting incident. Winkle's 1974 statement indicates that plaintiff sought Winkle's help in gathering evidence that would enable plaintiff to obtain a discharge in lieu of being prosecuted, and that the two men therefore concocted the shooting incident. Mr. Bunce retracted his earlier testimony regarding plaintiff's bad temper and stated that he signed the original statement because he was "fearful of questioning that statement." Mr. Bunce's wife stated in 1974 that Major Lindstrum had put enormous pressure on Bunce to testify against plaintiff. Finally, plaintiff's sister stated that information that she had provided in 1945 to a representative of the Red Cross was not true and was given only at her brother's prompting. Plaintiff now further states that he was not allowed to be present at his discharge hearing, and that any information he gave in 1945 indicating his alleged anti-social behavior was merely the product of pressure imposed by Major Lindstrum. Furthermore, plaintiff says that a statement purporting to summarize his testimony before the Board of Officers was fabricated. See Plaintiff's exhibit 10.

After obtaining the 1974 statements from the players in the drama, plaintiff petitioned the Air Force Board for the Correction of Military Records (Correction Board) for a correction of his discharge to honorable and for the expungement of adverse material from his record. The Correction Board granted partial relief as to the discharge, changing it from undesirable to general. The Correction Board refused to grant plaintiff an honorable discharge and refused to correct plaintiff's records. See Plaintiff's exhibit 17. These suits followed.

We cannot proceed to the merits of plaintiff's claims until we determine whether we have jurisdiction to entertain these actions. Breaking plaintiff's suits down to their component parts, we note that plaintiff seeks (1) injunctive or corrective relief from the Air Force in the form of a change in plaintiff's records, (2) damages from the Air Force, (3) damages from Lindstrum and Balser, and (4) damages and injunctive relief from the Veterans Administration. The defendants have challenged our jurisdiction to entertain any of these claims.

The Veterans Administration (VA) argues that we have no jurisdiction to hear plaintiff's claim against it because 38 U.S.C. § 211(a) makes all decisions of the Administrator regarding veteran benefits final and unreviewable:

> Except as provided in sections 784, 1661, 1761, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision.

We agree with the VA's contention. The language of the statute unequivocally

states that we have no jurisdiction to hear this action, and the courts have uniformly so interpreted the statute. *See, e. g., DeRodulfa v. United States,* 149 U.S.App.D.C. 154, 461 F.2d 1240 (1971). *See also Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Although a challenge to the constitutionality of a law administered by the VA would not be barred by § 211, *Johnson v. Robison, supra,* plaintiff does not challenge the constitutionality of any statute. Rather, plaintiff challenges the decision of the Administrator and alleges that the decision violated his constitutional rights. These allegations are insufficient to sustain jurisdiction, because section 211(a) bars a constitutional challenge to actions of the Administrator under the veterans benefits statutes. *See Anderson v. Veterans Administration,* 559 F.2d 935 (5th Cir. 1977); *Ross v. United States,* 462 F.2d 618 (9th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 326, 34 L.Ed.2d 249 (1972). Plaintiff's claim against the Veterans Administration is dismissed for want of jurisdiction.

Turning to plaintiff's claim against the Air Force, we note first that this claim is essentially a claim against the United States. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). This is true both for the claim for corrective relief and for the claim for damages against the Air Force and Lindstrum and Balser in their official capacities as Air Force officers. *See id.* at 620–22, 83 S.Ct. 999. These defendants contend that all claims against the United States are barred by the statute of limitations contained in 28 U.S.C. § 2401, which provides:

> Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.

We will consider plaintiff's claim for corrective relief separately from the damage claim.

Defendants argue that plaintiff's civil action accrued as of the date of discharge in 1945. *See Mathis v. United States,* 391 F.2d 938, 183 Ct.Cl. 145 (1968). Thus defendants argue that plaintiff's complaint, filed in 1978, is time-barred. The Court of Appeals for the District of Columbia Circuit, in *Baxter v. Clayton,* No. 77–1984 (D.C.Cir., December 19, 1978), avoided the consequences of accrual upon discharge by deciding that a claim for corrective relief is not subject to any time bar because of the significant collateral consequences attaching to a less than honorable discharge.

We choose a different attack. We hold that we need not determine whether a time bar applies here because plaintiff's cause of action for corrective relief was filed within six years of accrual. Section 2401 bars only those actions that are brought more than six years after the cause of action first accrued. Thus plaintiff's action would not be barred unless it accrued more than six years prior to the filing of the complaint on July 28, 1978.

The corrective action portions of plaintiff's *pro se* complaint essentially seek an order compelling the Secretary of the Air Force to change plaintiff's discharge records and to expunge unfavorable discharge information from plaintiff's records. Plaintiff thus seeks review of the decision of the Air Force Board for the Correction of Military Records denying him this relief under 10 U.S.C. § 1552. Section 1552 provides in pertinent part:

> (a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

Because plaintiff filed his complaint only two years after the March 8, 1976 Correction Board's unfavorable decision, plaintiff's claim for review would not be barred by § 2401 because the cause would have accrued on the date of the Correction Board's decision, not when the plaintiff was discharged. *See Uhley v. United States,* 121 F.Supp. 674, 128 Ct.Cl. 608 (1954). This rationale helps to explain the many decisions in which courts have entertained cor-

rective actions which would have been time barred if the cause accrued as of the date of discharge. In all of these cases, the plaintiff brought his corrective action shortly after an unfavorable Correction Board decision. *See Homcy v. Resor*, 147 U.S.App. D.C. 277, 455 F.2d 1345 (1971); *Haines v. United States*, 453 F.2d 233 (3d Cir. 1970); *Angle v. Laird*, 429 F.2d 892 (10th Cir. 1970), *cert. denied*, 401 U.S. 918, 91 S.Ct. 90, 27 L.Ed.2d 819 (1971); *Ragoni v. United States*, 424 F.2d 261 (3d Cir. 1970); *Smith v. McNamara*, 395 F.2d 896 (10th Cir. 1968), *cert. denied*, 394 U.S. 934, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969); *Ashe v. McNamara*, 355 F.2d 277 (1st Cir. 1965); *Lima v. Secretary of the Navy*, 314 F.Supp. 337 (E.D.Pa.1970).

Moreover, this rationale does not allow a plaintiff to wait indefinitely before attempting to correct his records. Section 1552(b) provides that no request for correction of records may be made more than three years after the discovery of the error or injustice unless the Correction Board "finds it to be in the interest of justice" to excuse the failure to file within the three-year limit. Therefore if the Correction Board determines that the serviceman's failure to comply with the time limits was inexcusable and that the interest of justice does not dictate consideration of the request, then the Correction Board will deny relief on timeliness grounds, and our review of this decision would be limited to a determination of whether the Board properly refused to hear the claim on that basis. *Boruski v. United States*, 493 F.2d 301, 304 (2d Cir. 1974). Therefore a plaintiff would be deterred from delaying his request for correction in order to allow unfavorable evidence to grow stale. Because Congress has given the Correction Board the power to excuse an untimely filing and consider the merits of a plaintiff's claims, the district court's power to review the Board's decision on the merits should be the same regardless of whether the plaintiff filed his correction request within three years of discharge.

We still must be sure that we have a jurisdictional basis empowering us to review a Correction Board's order, however. The mandamus statute, 28 U.S.C. § 1361, provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Section 1361 empowers us to review decisions made by the Correction of Military Records Boards pursuant to 10 U.S.C. § 1552. The leading case involving mandamus jurisdiction over administrative decisions of Correction Boards is *Ashe v. McNamara*, 355 F.2d 277 (1st Cir. 1965). After reviewing the legislative history of § 1552, the *Ashe* court concluded that Congress intended courts to be able to review Correction Board decisions despite language in § 1552 that "a correction under this section is final and conclusive on all officers of the United States." Other courts have followed the *Ashe* court in determining that mandamus relief is appropriate in this situation. *See Homcy v. Resor, supra; Angle v. Laird, supra; Smith v. McNamara, supra; Ragoni v. United States, supra; Haines v. United States, supra; Lima v. Secretary of the Navy, supra. Contra Keeney v. Secretary of the Army*, 437 F.2d 1151 (8th Cir. 1971).

Although plaintiff has not cited 28 U.S.C. § 1361 in his complaint and thus has not alleged the proper jurisdictional basis for his claim for review, Federal Rule of Civil Procedure 8 allows us to sustain jurisdiction if the allegations of the complaint reveal a proper basis for jurisdiction. *See Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978). Plaintiff's complaint alleges that the Correction Board's decision to grant him only partial relief was incorrect and he seeks an order compelling the Air Force to issue plaintiff an honorable discharge and to expunge unfavorable discharge material from his records. This is sufficient to reveal a proper basis for jurisdiction under § 1361. Moreover, although plaintiff seeks a review of the Correction Board's decision but has not included the Board or its members as parties, we need not order plaintiff to amend his complaint

to add additional parties. Plaintiff has sued the Secretary of the Air Force, and the Secretary, acting through the Board, has the power to correct records. Thus plaintiff's inclusion of the Secretary of the Air Force was sufficient. *Ashe v. McNamara, supra* at 278 n. 1. We conclude that we have jurisdiction under 28 U.S.C. § 1361 to review the decision of the Correction Board.

██ As for plaintiff's claim for damages against the Air Force and Lindstrum and Balser in their official capacities, we have no jurisdiction to hear such a claim. Any action which seeks more than $10,000 in damages in a claim "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department . . . ." is within the exclusive jurisdiction of the Court of Claims. 28 U.S.C. § 1346(a)(2). *Sherar v. Harless*, 561 F.2d 791 (9th Cir. 1977). Because plaintiff's action for damages for his wrongful discharge is an action arising out of Acts of Congress and executive department regulations, we have no jurisdiction to entertain plaintiff's action for damages against the Air Force or Balser and Lindstrum in their official capacities. Title 28 U.S.C. § 1406(c) permits us to transfer a case which is within the exclusive jurisdiction of the Court of Claims to that court, "if it be in the interest of justice." It would not be in the interest of justice, however, because plaintiff's claim for damages did accrue upon his discharge, and so would be barred by § 2401.

██ Finally we note that defendants Balser and Lindstrum have not been served with process in their individual capacities as required by Federal Rule of Civil Procedure 4. Therefore we must dismiss this action as to Lindstrum and Balser for lack of personal jurisdiction.

Defendant's motion to dismiss in 78 C 3172 is granted and judgment will enter dismissing that action.

Defendants' motion to dismiss in 78 C 3019 is granted as to plaintiff's damage claims against all parties and denied as to plaintiff's claim for corrective relief. The entry of final judgment in this action will be withheld pursuant to Rule 54(b), F.R. Civ.P.