**Michael RYAN et al., Plaintiffs,**

v.

**Joseph Maxwell CLELAND, Administrator, United States Veterans Administration et al., Defendants.**

**No. CV 81–0055.**

United States District Court,
E. D. New York.

Feb. 8, 1982.

On Reconsideration April 26, 1982.

Yannacone & Yannacone, P.C., Patchogue, N.Y., for plaintiffs.

U.S. Dept. of Justice by Joan M. Bernott, for Government Torts Branch, Civ. Div., Washington, D.C.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

Plaintiffs, who describe themselves as the victims of defendant Veterans' Administration's (VA) systemwide and institutionalized medical malpractice, brought this action seeking equitable and declaratory relief enjoining the VA from promulgating certain policies and compelling it to implement other policies. The original complaint asserted many bases for jurisdiction: federal question, 28 U.S.C. § 1331; the supremacy clause of the federal constitution, Article VI, § 2; the ninth amendment of the federal constitution; the due process clause of the fifth amendment; the due process, equal protection, and privileges and immunities clauses of the fourteenth amendment; diversity jurisdiction under 28 U.S.C. § 1332; the civil rights act of 1871, 42 U.S.C. § 1983; and, finally, various unidentified federal and state statutes and regulations protecting the rights of veterans "since the formation of the Continental Army in 1776".

Defendants moved to dismiss, contending that none of the jurisdictional bases relied upon by plaintiffs permit the court to consider the wide ranging claims presented in the complaint. Plaintiffs then responded to that motion by cross-moving for permission to serve and file an amended complaint and for additional immediate relief. Defendants responded to the cross-motion by urging the court to deny leave to amend, or, alternatively, to dismiss the amended complaint because even under the amended jurisdictional theories propounded by plaintiffs' attorney, no statute conferred jurisdiction over the issues raised in the amended complaint.

Complicating the procedural morass still further, some of the parties in the multidistrict litigation pending before the court have argued that many of the causes of action asserted in these complaints are interrelated to and dependent upon the court's determination of pending motions in that multidistrict litigation, In re Agent Orange Products Liability Litigation, MDL–381. Although the court agrees that there is some overlap between some of the MDL–381 issues and those issues that plaintiffs seek to bring before the court in these complaints, the court is, nevertheless, without power to consider any complaint not properly before it on a valid jurisdictional base. The key issue presented by the government's motion, therefore, is whether any statute confers upon this court jurisdiction over any of the causes of action set forth in the original or amended complaints.

## THE PROPOSED AMENDED COMPLAINT

Since the proposed amended complaint does not rely on all of the jurisdictional bases set forth in the original complaints, the court assumes that those jurisdictional bases not set forth in the amended complaint and addressed in plaintiffs' memorandum of law have been abandoned. Accordingly, the court will focus its attention upon the proposed amended complaint.

The amended complaint (hereinafter "the complaint") seeks declaratory, injunctive and mandamus relief only; it does not seek money damages, although defendants would certainly incur substantial expense if the relief sought were granted. The complaint is not organized in the normal fashion of setting forth separate, identifiable causes of action; instead, the jurisdictional statutes are identified, class action allegations are set forth, a description of plaintiffs' claims follows, and, finally, plaintiffs' prayer for relief concludes the 37 page pleading.

Plaintiffs allege that from 1962 through 1971, approximately 2.4 million American servicemen were exposed to contaminated herbicides intended for use in Southeast Asia. An unidentified number of these veterans now manifest what plaintiffs state are symptoms of exposure to the toxic agent, dioxin. Plaintiffs contend that upon their discharge from the armed forces the United States failed to warn the veterans of any dangers associated with exposure to dioxin, and that the VA and other governmental agencies failed to provide the necessary medical care and treatment to plaintiffs.

Plaintiffs allege that as of January 9, 1980, the VA and the individual VA officers knew, or should have known, of the dangers associated with exposure to dioxin. Plaintiffs describe in detail the scientific "proof" of causation of which the defendants should have been aware, and they list two pages of "known" toxic effects from exposure to dioxin.

Plaintiffs contend that the VA and the individual defendants have ignored their duty to provide veterans with "timely and complete" care for any disability that is "within the range of probability" service-related. The individual defendants allegedly have conspired to withhold information about the effects of exposure to dioxin from plaintiffs and from the general public, to withhold medical care from the veterans, and to mislead and misrepresent to the veterans and their families the effects of exposure.

Additional specific allegations include claims that defendants have discouraged veterans from filing claims for veterans' benefits, from filing claims for actionable torts under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, and from filing claims for violations of the constitutional rights of the veterans and their families. Plaintiffs also allege that defendants have conspired to over-medicate veterans with psychotropic drugs, and to ignore symptoms of brain damage, nervous system damage, and other serious genetic damage. Plaintiffs contend that defendants' policies are grossly negligent, deliberately indifferent, and result in the deprivation of the veterans' vested rights to timely and complete care. Plaintiffs also allege that certain veterans are so physically, emotionally and economically helpless that they are in fact prisoners of the VA hospital system.

The relief demanded in the complaint is varied and far-reaching. Plaintiffs seek the designation of a class representative; a declaration that every Viet Nam veteran has the right to claim the protection of the law; a declaration that every Viet Nam veteran is entitled to a remedy for the violation of a vested legal right; a declaration that defendants have deprived plaintiffs of their rights under the fifth and ninth amendments; a declaration that the individual defendants have violated the veterans' fifth, eighth and ninth amendment rights; a declaration that the prescription of psychotropic drugs without justification constitutes cruel and unusual punishment under the eighth amendment; a declaration that the individual defendants should be charged with knowledge of the dangerous properties and toxic characteristics of the chemicals to which the veterans were exposed during their service in the armed forces; a declaration that defendants' refusal to warn plaintiffs of these toxic qualities is a breach of a fiduciary duty owed to them; a declaration that the VA and all other governmental agencies are estopped from asserting the statute of limitations as a bar to any future claim by veterans; a declaration that the proposed class action complaint complies with the FTCA's notice of claim requirement, making it unnecessary for plaintiffs to file individual claims; an order directing defendants to prepare a data base including the complete medical history of all the veterans claiming exposure to dioxin; an order directing the VA to prepare a form notice to all veterans advising them of the potential consequences from their exposure to dioxin, that they are entitled to medical care for any resulting injury, that this complaint has been filed, that the class action suit against the chemical companies is pending (MDL–381), that they have the right to file claims under the

FTCA, and providing them sufficient information to enable them to accurately complete those claims; an order requiring defendants to disclose all information in their possession to veterans and their families; an injunction against any further prescription of psychotropic drugs absent certain safeguards, including a prior complete psychological, psychiatric and physiological evaluation, a full explanation of the potential effects of the drugs to the veteran and his family, and more complete testing of the effects of the drugs; an order directing the VA to conduct an extensive series of examinations and tests on all veterans; a full disclosure of all information in the possession of the VA to plaintiffs' attorneys; an order prohibiting the VA from performing only limited examinations of plaintiffs; and, finally, an order enjoining defendants from distribution of certain objectionable documents, including a pamphlet entitled "Worried About Agent Orange?".

## RELATIONSHIP TO MDL–381

Before proceeding to a discussion of whether jurisdiction properly lies over any of the matters set forth in plaintiffs' complaint, it is necessary to identify those aspects of plaintiffs' requested relief that have already been determined in the context of the multidistrict litigation pending before the court, *In re Agent Orange Product Liability Litigation*, MDL–381.

■ Plaintiffs' allegation that the government has breached a duty to warn veterans of potential dangers associated with exposure to Agent Orange has already been found to be barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny. Without attempting to reiterate in full all of the reasons why this court concluded that the government was immune from suit for its failure to inform the plaintiff veterans of possible dangers associated with exposure to Agent Orange, essentially, the court concluded that plaintiffs' claims are "incident to and arising out of service" within the meaning of *Feres*, and, thus, barred by the doctrine of sovereign immunity. The court

reasoned that the failure to alert the plaintiff veterans to the dangers to which they may have been exposed during their military service was inseparable from and part of plaintiffs' wartime claims relating to use of Agent Orange. *See In re Agent Orange Products Liability Litigation*, MDL–381, pretrial order # 26, 506 F.Supp. 762, 777–79 (E.D.N.Y.1980).

Although the Agent Orange litigation focused upon the government's position in the context of third party claims by the government contractor defendants, the government is equally immune from suit for its wartime activities when it is plaintiffs who are suing the government directly. Indeed, the third-party liability claim considered by the court was bottomed on a premise of direct liability of the government toward the veterans. Accordingly, to the extent that plaintiffs seek relief from the United States due to an alleged failure to warn the plaintiff veterans, the court has already determined that the government is immune from suit, and the motion to dismiss the causes of action seeking this relief must be granted.

■ To the extent that plaintiffs ask the court to relieve them from the notice of claim requirement set forth in the FTCA, the court has already determined it is without jurisdiction to do so. As the court has earlier stated in the context of the Agent Orange litigation:

> Accordingly, the court would be without jurisdiction to adjudicate any FTCA claim against the government by any plaintiff who does not file a notice of claim that complies with the requirements of 28 USC § 2401(b) and the court may neither repeal the statute, nor order the government to ignore the statutory requirements, nor toll the running of the two year period. *In re Agent Orange Product Liability Litigation*, MDL–381, Pretrial Order # 5, 506 F.Supp. 757, 760 (E.D.N.Y.1980).

Moreover, as the court has previously noted, since the court is without power to waive the jurisdictional requirements of the FTCA, it is important that plaintiffs not be

misled into thinking that they have protected their rights under the FTCA by merely filing a complaint in this action or in the multidistrict litigation.

The government's motion to dismiss those aspects of the complaint asking the court to fashion an alternative to the cumbersome requirements of the FTCA must be granted.

## REVIEW OF VA ACTIONS

Both the original and the proposed amended complaint identify defendants as the VA itself, along with the administrator and various of its officials and their successors in interest. Although plaintiffs contend that a variety of statutes confer jurisdiction over actions of the VA, judicial consideration of actions by the VA is limited by 38 U.S.C. § 211:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise. 38 U.S.C. § 211(a).

In *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court held that § 211 did not bar judicial review of constitutional questions, but was designed to preclude review "only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans." 415 U.S. at 367, 94 S.Ct. at 1165 (emphasis in original). Thus, the no-review clause immunizes the administrator from challenges to the interpretation or application of a particular VA statute, but the no-review clause does not preclude a challenge to the constitutionality of the statute itself. Although *Johnson* was concerned with the constitutionality of a statute passed by congress, some lower courts have interpreted *Johnson* and § 211 as permitting constitutional challenges to procedural

policies and regulations of the VA as well. *Devine v. Cleland*, 616 F.2d 1080 (C.A.9 1980); *Plato v. Roudebush*, 397 F.Supp. 1295 (D.Md.1975). Other courts, however, have interpreted *Johnson* and § 211 as permitting constitutional challenge only to statutes passed by congress, but not to VA policies. *E.g., Anderson v. Veterans' Administration*, 559 F.2d 935 (C.A.5 1977); *Mulvaney v. Stetson*, 470 F.Supp. 725 (N.D. Ill.1979). Additionally, some courts have found that § 211 does not prohibit review of the limited issue of whether the administrator had authority to promulgate challenged regulations. *E.g., Evergreen State College v. Cleland*, 621 F.2d 1002 (C.A.9 1980); *Merged Area X v. Cleland*, 604 F.2d 1075 (C.A.8 1979); *Wayne State University v. Cleland*, 590 F.2d 627 (C.A.6 1978).

In the wake of *Johnson* exceptions to the no-review clause have been allowed only after careful consideration of the primary objectives of § 211 identified by the Supreme Court in *Johnson*:

> (1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made. 415 U.S. at 370, 94 S.Ct. at 1167 (footnotes omitted).

*Johnson* and its progeny all accept the general prohibition on judicial review of actions of the VA. While the constitutionality of statutes the VA is charged with administering are not immune from review, congress intended for nearly all actions by the administrator in implementing and enforcing VA policy to be foreclosed from judicial review. Thus, unless plaintiffs' complaint falls within one of the narrow exceptions to § 211's broad prohibition, this court lacks jurisdiction over the subject matter of the complaint. The court will next consider whether the jurisdictional bases relied upon by plaintiffs take the causes of action alleged in the complaint outside the reach of § 211.

## JURISDICTION

The complaint and plaintiffs' motion papers set forth the following jurisdictional theories: (1) federal question jurisdiction, based on four different constitutional provisions, including the supremacy clause, the ninth amendment, the fifth amendment, and the eighth amendment; (2) the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*; (3) conspiracy to violate civil rights, 42 U.S.C. § 1985(3); (4) mandamus, 28 U.S.C. § 1361; and (5) declaratory and equitable jurisdiction, 28 U.S.C. §§ 2201, 2202. These five jurisdictional bases are discussed below.

1. *Federal Question Jurisdiction: Constitutional Violations.*

The essence of plaintiffs' complaint concerns the VA's failure to provide veterans with the medical care and treatment to which they contend they are entitled. Because 38 U.S.C. § 211 does not permit policy decisions of the administrator to be challenged in court, plaintiffs attempt to articulate their position in constitutional terms in order to confer jurisdiction on this court. While plaintiffs' attempt to elevate their claims to a constitutional level is certainly inventive, after careful consideration the court concludes that no bona fide constitutional issue is presented.

Although the supremacy clause is quoted in full in the complaint, plaintiffs do not appear to rely upon it as an independent jurisdictional basis for the complaint. Rather, in their brief plaintiffs focus upon the fifth, eighth and ninth amendments in support of their constitutional claims.

Plaintiffs contend that both their procedural and substantive due process rights are violated by the VA. Neither contention is clearly set forth in the plaintiffs' brief. The procedural due process claim apparently relates to plaintiffs' inability to force the VA to respond to their demands; the substantive due process claim apparently relates to the deprivation of plaintiffs' property rights.

In determining whether a plaintiff's procedural due process rights have been violated, the court must first determine whether plaintiff has an interest that falls within the protection of the due process clause, and if so, whether the procedure governing that right is adequate. The Supreme Court has held that protected interests can be created and defined by statutes or rules that entitle citizens to certain benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Court has found that welfare recipients have an interest within the protection of the due process clause. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Similarly, a non-tenured professor may have a property interest in continued employment requiring due process protection if the normal expectation was that tenure would be granted automatically. *Perry v. Sinderman*, 408 U.S. 725, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Court held that students were deprived of a property interest without due process of law when they were temporarily suspended from school without a hearing. In this case, plaintiffs contend that the property right at issue is their "timely and complete *right* to medical care by virtue of the VA statutes providing for medical care".

Plaintiffs contend that their "right" to medical care stems from two sources: the expectation of veterans and their families that the government will provide medical care for all service-related injuries, and various statutes that confer the "right" to medical care to all veterans. Even assuming that an unadjudicated and unconferred benefit to which plaintiffs *may* be entitled under the statute is a property interest deserving due process protection, congress has adopted an administrative framework for adjudication of entitlement to benefits that has been constitutionally upheld. *See Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). As discussed above, the Supreme Court and lower courts have noted that congress intended to narrowly confine those determinations of the administrator that are reviewable by a court, and congress' power to limit judicial review has been constitutionally upheld.

*E.g., DeRodulfa v. United States*, 461 F.2d 1240 (D.D.C.1979), and cases discussed therein.

The Court in *Johnson* specifically noted that the prohibition on judicial review was aimed at

> those decisions of law or fact that arise in the *administration* of the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts * * *.

415 U.S. at 367, 94 S.Ct. at 1166.

Here plaintiffs ask the court to review precisely what the statute precludes any court from reviewing: decisions by the administrator relating to eligibility for medical care and VA benefits. Thus, to the extent that the government has conferred any "rights" upon veterans to government medical care, congress has also insulated the administrative decision-making process for adjudicating those rights from judicial review.

In upholding the constitutionality of the administrative procedure for determining entitlement to veterans' benefits, the Court of Appeals for the District of Columbia has noted that even if a potential recipient has a sufficient interest to trigger operation of the due process clause, no contractual right to receive public benefits was created by congress, and no constitutional issue is presented by congress' decision to vest sole discretion in the VA for adjudicating a particular veteran's right to benefits. *DeRodulfa v. United States, supra.* The D.C. circuit stated:

> The Supreme Court has declared that "the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts"; "it may", instead, "provide an administrative remedy and make it exclusive * * *" That is precisely what Congress did in the current version of Section 211(a), and Congress was well within its legislative prerogative when it did so. *DeRodulfa v. United States*, 461 F.2d at 1258 (citations and footnotes omitted).

Other courts faced with this issue have agreed. *Mulvaney v. Stetson*, 470 F.Supp. 725 (N.D.Ill.1979); *Cox v. Veterans' Administration*, 470 F.Supp. 1209 (N.D.Tex.1979).

Plaintiffs attempt to bring this case outside the general rule because of the large numbers of veterans affected, and their widespread dissatisfaction with VA policies. However, plaintiffs' allegations do not overcome the long line of cases holding that the VA's determination of eligibility for veterans' benefits is beyond the jurisdiction of the court. Congress has established an administrative procedure for adjudication of veterans' claims for benefits, and that procedure has been found to be constitutionally adequate; whether plaintiffs agree with this procedure or consider it a wise one is not an issue properly before this court. The court concludes that plaintiffs have not stated a claim for relief under the fifth amendment.

■ Plaintiffs also contend that their eighth amendment claims confer jurisdiction upon this court. Defendants properly assert that the eighth amendment applies only to wrongs associated with criminal prosecutions; the plaintiffs respond by arguing that the VA medical system makes them *de facto* prisoners within the meaning of the eighth amendment. Plaintiffs' novel interpretation of the parameters of the eighth amendment is untenable in light of the Supreme Court's decision in *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

The eighth amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted". In light of the express language of this amendment, it has traditionally been applied only in the context of criminal cases. As the Supreme Court stated in *Ingraham*:

> Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power to those entrusted with the

criminal-law function of government. An examination of the history of the Amendment and the decisions of this Court construing *the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.* We adhere to this long standing limitation * * *. 430 U.S. at 664, 97 S.Ct. at 1408–09 (emphasis added).

The eighth amendment is designed to limit criminal punishment, and the court rejects plaintiffs' argument that the eighth amendment encompasses their claim that they are "chained to the VA medical system" because of their lack of finances to seek medical care elsewhere. The court concludes that plaintiffs have not stated a claim for relief under the eighth amendment.

■ Plaintiffs also rely upon the ninth amendment as a basis for jurisdiction. However, plaintiffs cite no case in support of their ninth amendment claim, and the court concludes that plaintiffs have not stated a ninth amendment claim.

Although plaintiffs have attempted to state their dissatisfaction with VA policy in constitutional terms, the court concludes that they have failed to set forth any viable constitutional claim. While it is clear that plaintiffs are unsatisfied with their ability to petition the VA through the administrative structure for resolution of the issues raised in the complaint, it is clear to this court that the VA's conduct does not sink to the level of a constitutional violation, even when all of the allegations in plaintiffs' proposed amended complaint are accepted as true. The court concludes that plaintiffs have failed to plead a valid constitutional claim, and that federal jurisdiction over the complaint under a theory of unconstitutional administration by the VA is, therefore, lacking.

2. *Federal Tort Claims Act Jurisdiction.*

■ Plaintiffs argue that this court should not construe the provisions of the Federal Tort Claims Act (FTCA) as permitting only individual claims and prohibiting classwide relief. However, there are several reasons why the FTCA does not provide jurisdiction over the claims set forth in the complaint, either as individual cases or as a class action suit.

First, the only form of relief provided for in the FTCA is money damages. 28 U.S.C. § 1346(b); *Birnbaum v. United States,* 588 F.2d 319, 335 (C.A.2 1978). Since plaintiffs are seeking only declaratory and injunctive relief, the FTCA cannot provide jurisdiction.

Second, plaintiffs do not plead in their complaint that they have complied with the procedural prerequisites for commencement of a suit under the FTCA. This court has previously stated that it is without jurisdiction to judicially amend the FTCA's requirements, and since plaintiffs have not complied with these procedural prerequisites, the court does not have jurisdiction over the complaint under the FTCA.

3. *Conspiracy to Violate Civil Rights.*

■ In their original complaint, plaintiffs attempted to state a claim under 42 U.S.C. § 1983. Now, in the proposed amended complaint, plaintiffs appear to have abandoned that statute and, instead, rely upon 42 U.S.C. § 1985(3) as an additional basis for federal jurisdiction. In support of this claim, plaintiffs ask for an evidentiary hearing so that they can establish that the individual defendants have conspired to treat Viet Nam veterans different from all other veterans, in violation of the fourteenth amendment. Again, the heart of plaintiffs' case lies in their disagreement with the VA's policies toward those veterans claiming to exhibit symptoms of exposure to dioxin. The fact that plaintiffs fail to identify with particularity the defendants who are claimed to have participated in this "conspiracy", and have failed to identify particular actions taken by these defendants in furtherance of the conspiracy suggests that plaintiffs are really just restating their dissatisfaction with the VA's administrative and policy decisions.

Plaintiffs' failure to identify or to serve particular VA officials as defendants, as well as their failure to comply with venue requirements, cannot be looked upon as mere technical failures that could be cured at a later date. Instead, it is highly unlikely that plaintiffs would be able to state a cause of action under § 1985(3).

In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court outlined the prerequisites for a cause of action under the Ku Klux Klan Act, 42 U.S.C. § 1985(3):

The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional

purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. * * * The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. *Griffin v. Breckenridge*, 403 U.S. at 102, 91 S.Ct. at 1798 (footnotes omitted) (emphasis in original).

Plaintiffs do not offer any support for their theory that differential treatment among veterans by the VA is the type of invidiously discriminatory class based animus required for a claim under § 1985(3). For example, there is no claim that the VA differentiates among veterans on the basis of race or some other invidious criterion. Moreover, plaintiffs offer no support for the novel proposition that the VA's treatment of veterans has implications for the equal protection clause of the fourteenth amendment. Finally, and perhaps even most significantly, the Supreme Court has previously held that the Ku Klux Klan Act does not apply to deprivations of constitutional rights by federal officials because the fourteenth amendment applies only to actions by the state and those acting under color of its authority. *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

The court concludes that plaintiffs have failed to plead a cause of action under 42 U.S.C. § 1985(3) so as to give rise to jurisdiction over the complaint.

### 4. *Mandamus Jurisdiction.*

█ Plaintiffs also rely upon mandamus jurisdiction since they seek an order directing the individual VA officials to perform their duties in the manner that plaintiffs say the statute should be interpreted. However, 38 U.S.C. § 211(a) specifically provides that decisions by the VA administrator are not reviewable in court, "in the nature of mandamus or otherwise". Thus, congress has specifically removed mandamus as a possible basis for jurisdiction to review actions by the administrator.

The court concludes that 28 U.S.C. § 1361, mandamus jurisdiction, is precluded as a basis for jurisdiction by 38 U.S.C. § 211.

### 5. *Equitable Jurisdiction.*

█ Since plaintiffs are seeking only equitable and declaratory relief in their complaint, they point to 28 U.S.C. §§ 2201 & 2202 as additional statutes conferring jurisdiction on the court. However, neither of these statutes expands in any manner the normal jurisdiction of the court. Both statutes merely establish that declaratory relief is available in a case that is otherwise within the court's jurisdiction.

This court has previously noted that a claim for equitable relief does not expand the normal jurisdictional requirements:

Federal courts have no independent "equity jurisdiction"; they may grant equitable relief, but not unless there is an independent statutory basis for federal jurisdiction, which is conferred only by specific congressional enactment. See 7 Moore, Federal Practice, ¶ 65.03(2). *In re Agent Orange Product Liability Litigation*, MDL–381, 506 F.Supp. 737, 740 (E.D.N.Y.1979).

The court concludes that plaintiffs' claims for declaratory and equitable relief do not by themselves confer jurisdiction upon this court.

### CONCLUSION

After careful consideration, the court concludes that there simply is no valid jurisdictional basis that would permit this court to consider the far-ranging claims of the proposed amended complaint. When the court dismissed the government as a defendant in MDL–381, it specifically noted that such dismissal was without prejudice to any plaintiff's right to commence a separate action for post-discharge negligence on the part of the government. However, plaintiffs have eschewed the most obvious route for prosecution of any valid claims they do have for negligent treatment at a VA hospital—a cause of action under the FTCA. Instead, plaintiffs ask the court to interject itself into what appears to be a political struggle between veterans and the VA. These complaints of the veterans are best addressed to those branches of government that are able to influence the policy decisions of the administrator—the congress and the executive.

After considering the proposed amended complaint in the light most favorable to plaintiffs, the court concludes that none of

the jurisdictional statutes relied upon by plaintiffs confer upon this court jurisdiction over the matters raised in the complaint.

The court's decision today focuses upon the proposed amended complaint in *Ryan v. Cleland et al.,* CV 81–0055. The government identifies in footnote 3 of its moving papers other actions where the VA and VA officials are named as defendants, and this decision is intended to apply to those actions and any similar cases filed since that time as well. Moreover, other plaintiffs have filed actions relying upon jurisdictional grounds previously found to be invalid by the court in MDL–381. *E.g., In re Agent Orange Product Liability Litigation,* MDL–381, Pretrial Order # 5, 506 F.Supp. 737, 740–742 (E.D.N.Y.1979) (Plaintiffs cannot rely upon the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §§ 135–135k, the Federal Environmental Pesticide Control Act (FEPCA), 7 U.S.C. §§ 136–136y, the Toxic Substances Control Act (TOSCA), 15 U.S.C. §§ 2601 *et seq.,* or the Consumer Product Safety Act (CPSA), 15 U.S.C. §§ 2051 *et seq.* to confer jurisdiction.); Pretrial Order # 26, 506 F.Supp. 762, 773–82 (*Feres* bars claims arising out of or incident to military service.)

The government shall identify by name and docket number all actions covered by the orders referred to above. The government shall file and serve on all plaintiffs' counsel a list of all such cases by March 12, 1982, along with a copy of this order. On March 26, 1982 the court will enter orders dismissing all actions referred to by the government, unless by that date the attorney of record in any such case notifies the court, in writing, of additional jurisdictional grounds relied upon in the complaint that have not yet been ruled upon by the court.

The government's motion to dismiss the complaint in its entirety is granted, and the cross-motions, including those filed February 8, 1982, are all denied as moot.

SO ORDERED.

## ON RECONSIDERATION

By memorandum and order dated February 8, 1982 the court granted defendants' motion to dismiss the complaint in its entirety, and directed the government to prepare a list of related cases on notice to all counsel. The court had intended to direct the entry of judgment in all cases covered by the court's order in this case and prior orders entered in the related multidistrict litigation pending before the court, MDL–381.

The government complied with the court's directive and notified all counsel whose cases were subject to dismissal pursuant to the order. However, the court has since received numerous letters from counsel asserting that for various reasons many of the cases cited by the government are not subject to dismissal. The court has therefore reconsidered its original order and will not now direct that judgment be entered in any case pending in the multidistrict litigation.

However, this lawsuit is not now and has never been part of the multidistrict litigation, so the clerk is directed to enter judgment dismissing the complaint in this action in accordance with the February 8, 1982 memorandum and order.

SO ORDERED.