**Gary ZUSPANN, Plaintiff,**

v.

**Jesse BROWN, Secretary of the Department of Veteran Affairs, Wallace Hopkins, Dr. Edward Young and Dr. Susan Mather, Defendants.**

**Civ. No. W–94–CA–058.**

United States District Court,
W.D. Texas,
Waco Division.

Sept. 13, 1994.

James Eric Wren, III, Haley, Davis, Wren & Bristow, Robert L. McHaney, Jr., Waco, TX, for plaintiff.

Theodore C. Hirt, Dept. of Justice, Civ. Div., Felicia L. Chambers, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, for defendant Jesse Brown.

Stephen F. McGraw, U.S. Dept. of Justice, Trial Atty., Torts Branch, Civ. Div., Helene M. Goldberg, Nicki L. Koutsis, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants Dr. Edward Young, Dr. Susan Mather and Wallace Hopkins.

## ORDER

WALTER S. SMITH, Jr., District Judge.

Came on to be considered the Motion to Dismiss of Defendants Hopkins, Mather and Young, and the Secretary's Motion to Dismiss.

### I. *Background*

This is a civil action filed by Gary Zuspann, a handicapped veteran of the United States Navy, against the Secretary of the Department of Veteran Affairs; Dr. Edward Young, Chief of Staff at the Department of Veterans Affairs Hospital in Houston; Dr. Susan Mather, a Department physician in the office of the Undersecretary of Health; and Wallace Hopkins, Director of the Department of Veteran Affairs in Waco.

Plaintiff claims that he has been denied medical care, including life-sustaining medical treatment, to which he is entitled as a United States Veteran. Plaintiff claims that this denial of medical care violates the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Fifth Amendment of the United States Constitution. Plaintiff also brings a Bivens action against Defendants Young, Mather, and Hopkins for deprivation of Plaintiff's constitutionally protected property interest in his disability benefits. Plaintiff seeks declaratory relief, compensatory and punitive damages.

Plaintiff's claims arise out of his service with the Navy in Operation Desert Storm. Plaintiff was a mess cook on board the surface vessel, the U.S.S. New Orleans. While anchored in the Persian Gulf during the war, the crew of the U.S.S. New Orleans could see burning oil wells from Iraq, and Plaintiff was exposed to smoke and debris from these fires. Oil slicks were also visible on the surface of the Persian Gulf, and the U.S.S. New Orleans relied on the Gulf for its water supply. In March of 1991, the main power supply of the U.S.S. New Orleans failed, and a portable diesel fuel generator was used for power. The exhaust from this equipment permeated the entire ship for about six months. This was especially a problem because the ventilation system on board the ship was inoperable. The smell of hydrogen sulfide gas was often present on the ship, and reservoirs of diesel fuel directly above the Plaintiff's sleeping area were opened on numerous occasions.

After his service on board the U.S.S. New Orleans, the Plaintiff and other crew members disembarked in the Philippines and were ordered to assist in the clean up of ash and debris from a recent volcanic eruption. Unlike the volunteers from organizations assisting with the cleanup, the Plaintiff and crew were not given protective clothing and respirators to protect them from the dangerous volcanic ash (which contained quantities of silica).

The Plaintiff was then flown from the Philippines back to the mainland of the United States. After returning to Texas, the Plaintiff's health began to quickly deteriorate. After numerous examinations by V.A. doctors, the Plaintiff was examined by Dr. Claudia Miller, a physician specializing in environmental and occupational medicine. Dr. Miller concluded that Plaintiff's symptoms were compatible with the disease known as chemical sensitivity and recommended that he be sent to an environmental unit for diagnosis, and that various allergy tests be conducted. Dr. Hamill, the Plaintiff's attending physician in Houston, likewise diagnosed the Plaintiff with having symptoms compatible with chemical sensitivity. Finally, even Dr. Susan Mather concluded that chemical sensitivity was descriptive of Plaintiff's conditions.

Despite this diagnosis, the Plaintiff contends that the Department has refused to provide treatment for chemical sensitivity.

In fact, the Department refuses to recognize chemical sensitivity as a valid illness, despite the fact that numerous Persian Gulf veterans have suffered similar symptoms. The Plaintiff has been hospitalized several times in private hospitals for treatment since the Department's refusal to recognize his illness, but the Plaintiff is unable to pay such large hospital bills.

## II. *Motion to Dismiss*

■ A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be based on the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ynclan v. Department of the Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991). However, a motion that constitutes an attack on the subject matter jurisdiction of the court occurs when the motion refers to matters outside the pleadings, such as affidavits or testimony. *Oaxaca v. Roscoe,* 641 F.2d 386, 389 (5th Cir.1981). A court may consider affidavits and/or testimony when a party is making an attack on the court's jurisdiction. *Id.* at 389.

## III. *Discussion*

■ In order to properly file a suit in federal court, the plaintiff must establish that the court has jurisdiction to hear the case. A federal court's jurisdiction can be based on either diversity of citizenship or a federal question. Diversity of citizenship creates federal jurisdiction when a suit is between "citizens of a State, and foreign states or citizens or subjects thereof." 28 U.S.C. § 1332(a)(2); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1064 (5th Cir.1992). Federal jurisdiction based on a federal question exists when either: 1) some substantial, disputed question of law is a necessary element of one of the well-pleaded state claims; or, 2) one of the claims is effectively one of federal law. *NGS American, Inc. v. Barnes,* 805 F.Supp. 462, 464 (W.D.Tex.1992). The plaintiff in this case maintains that the court's jurisdiction is based on a federal question.

■ Congress, however, may limit the jurisdiction of a federal court, and has done so in this case. Through 38 U.S.C. § 511, Congress has expressly indicated that a federal court's jurisdiction to hear disputes involving veteran's benefits is to be of a limited nature.

■ This Act, § 511, creates a specific appellate review structure for disputes involving veterans and the Department of Veteran Affairs. The process begins with a decision being made at the Department level. If the veteran disagrees with the Department's decision, the veteran may appeal within the VA by filing a notice of disagreement with the Board of Veterans Appeals. 38 U.S.C. § 7105. The Board's decision is the final decision of the Secretary. 38 U.S.C. § 7104.[1] Review of the Secretary's final decision is governed by Chapter 72 of Title 38 of the United States Code. A veteran desiring to appeal the Secretary's decision must file a notice of appeal. 38 U.S.C. § 7266(a). The Court of Veterans Appeals has "exclusive jurisdiction" to review the decisions of the Board of Veterans Appeals. 38 U.S.C. § 7252(a); *Strott v. Derwinski,* 964 F.2d 1124, 1126 (Fed.Cir.1992) (stating that "Congress created the Veterans Court in part to provide judicial review of veteran's benefits decisions[, and that] [p]rior to the Act, there existed a statutory bar to such judicial review."). Any appeals from the Court of Veteran Appeals must be filed with the Court of Appeals for the Federal Circuit. 38 U.S.C. § 7292. The detailed nature of the procedural and appellate structure contained within the Veterans' Judicial Review Act clearly indicate Congress' intent to confine decisions affecting veteran's benefits within this structure.

---

1. The present Act, the Veterans Judicial Review Act of 1988, located at 38 U.S.C. § 511 provides the following:

"(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans

... Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by action in the nature of mandamus or otherwise." 38 U.S.C. § 511.

In cases involving veteran's benefits, many courts have held that § 511, and its precursor § 211(a), limits the federal judiciary's ability to exercise jurisdiction over suits involving veteran benefits. The key determinant in whether the federal court lacks jurisdiction to decide the dispute is dependant upon whether the veteran is challenging the day-to-day determination and interpretation of VA policy or making a constitutional attack on a statute.

For instance in *Ryan v. Cleland,* the court dismissed the plaintiff's claims for lack of jurisdiction because the plaintiff was challenging the day-to-day determination of VA policy. 531 F.Supp. 724 (E.D.N.Y.1982). In that case, a group of Vietnam veterans sought to force the V.A. to recognize and treat veterans for injuries they allegedly suffered from exposure to dioxin. The court held that the veterans' claims of entitlement to medical benefits did not rise to the level of a constitutional violation. *Id.* at 732. Thus, § 211(a) was a complete bar to the court asserting jurisdiction over the veterans' claims. Complaints about the quality and type of care provided was precisely the disputes Congress intended to preclude from judicial review with the passage of § 211(a). *Id.* at 732.

Since *Ryan,* the Second and Eighth Circuits have addressed the issue of when federal courts have the jurisdiction to resolve disputes involving veteran benefits. In *Larrabee By Jones v. Derwinski,* the Second Circuit distinguished constitutional claims that attack the statute as drafted from claims that attack the statute as applied. 968 F.2d 1497, 1500 (2nd Cir.1992). Section 211(a) precludes judicial review of non-constitutional claims, and a plaintiff may not circumvent the jurisdictional limitations imposed by § 211(a) by alleging damages for a constitutional violation arising out of a denial of benefits. *Id.* at 1500; *Pappanikoloaou v. Administrator of the Veterans Admin.,* 762 F.2d 8, 9 (2nd Cir.) (per curiam), *cert. denied,* 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985); *Tietjen v. United States Veterans Admin.,* 884 F.2d 514, 515 (9th Cir.1989); *Higgins v. Kelley,* 824 F.2d 690, 691 (8th Cir.1987); *Hiljer v. Walters,* 749 F.2d 1553

(11th Cir. (per curiam), *cert. denied,* 472 U.S. 1029, 105 S.Ct. 3506, 87 L.Ed.2d 637 (1985); *Anderson v. Veterans Admin.,* 559 F.2d 935, 936 (5th Cir.1977) (per curiam); *Hartmann v. United States,* 615 F.Supp. 446, 449 (E.D.N.Y.1985). Thus, § 211(a) precludes a federal court from exercising jurisdiction over claims seeking a particular type or level of care for veterans even when the claim is cloaked in constitutional terms. Congress' amendment to § 211 in 1988 foreclosed any possibility that federal courts could decide claims made by veterans that involved a denial of benefits or a level of care. The statutory language and scheme of § 211 clearly indicate Congress intended to exclude all issues affecting veterans benefits, even constitutional issues, from the federal judicial system. *Larrabee By Jones,* 968 F.2d at 1501; *Hicks v. Veterans Admin.,* 961 F.2d 1367, 1370 (8th Cir.1992) (holding that the statute applies to "*all* questions of law and fact." 38 U.S.C. § 511(a) emphasis added in original). (The statute includes all claims, whatever their bases, as long as the claim is "necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans.") Id. at 1369.

Plaintiff in this case is not alleging a facial attack on the constitutionality of an Act of Congress. Instead, Plaintiff is merely complaining about a denial of benefits. Plaintiff asserts within his complaint that he is challenging the policies and regulations of the Secretary, but the Plaintiff fails to specifically point to a policy or regulation that prevents plaintiff from obtaining medical care. In fact, plaintiff later denies that he is seeking change in agency policy or regulations at all. See Plaintiff's Response to Secretary's Motion to dismiss plaintiff's complaint at 19.

The gravamen of plaintiff's complaint is that he requires a particular level of care, i.e., chemical free living area. And that because he is not being provided with a specific level and type of care, his constitutional rights are being violated.

Other courts that have addressed this issue have held that a veteran cannot escape Congress' intent to confine decisions involving veteran's benefits and level of care to the

Department of Veterans Affairs by couching their arguments in constitutional terms. Furthermore, given the complexity of the health problems experienced by the Persian Gulf War Veterans and the variance of opinion inherent in medical diagnoses and treatment, this is the very type of case that would enmesh the courts in expensive, time-consuming litigation (involving a battle of experts) that § 511's judicial bar was constructed to avoid. Congress intends that such decisions be made by the Veterans Administration in the first instance, with exclusive review, if any, in the recently-created Court of Veterans' Appeals. The plaintiff cannot be allowed to circumvent Congress' purpose in enacting § 511.

Therefore, this court lacks the jurisdiction to hear plaintiff's claims.

### IV. *Conclusion*

Accordingly, it is

**ORDERED** that Defendant's Hopkins, Matter, Young, and the Secretary's Motion to Dismiss is **GRANTED.** It is further

**ORDERED** that this case be **DIS-MISSED** without prejudice. It is further

**ORDERED** that any pending motions be **DENIED** as moot.